**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| RICHARD W. POWELL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 06-494-GMS |
| | : | |
| STATE OF DELAWARE, | : | |
| DIVISION OF YOUTH | : | |
| AND REHABILITATIVE SERVICES, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT**

**OF SUMMARY JUDGMENT**

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Marc P. Niedzielski (# 2616)
Michael F. McTaggart (#2682)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendant

DATED: August 29, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

SUMMARY OF THE ARGUMENT ...........................................................................2

STATEMENT OF THE FACTS ..................................................................................3

### ARGUMENT I

PLAINTIFF'S CLAIM OF DISCRIMINATION BASED ON THE DENIAL OF A
PROMOTION IS TIME-BARRED UNDER TITLE VII BECAUSE THE ALLEGED
VIOLATION OCCURRED MORE THAN 300 DAYS BEFORE HE FILED A COMPLAINT
WITH THE DELAWARE DEPARTMENT OF LABOR ..............................................6

### ARGUMENT II

DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF
DISPARATE DISCIPLINE AS THERE IS NO EVIDENCE THAT NON-MEMBERS OF THE
PROTECTED CLASS WERE TREATED MORE FAVORABLY ...............................9

### ARGUMENT III

PLAINTIFF'S CLAIM OF HOSTILE WORK ENVIRONMENT IS PROCEDURALLY
BARRED BECAUSE PLAINTIFF HAS NOT EXHAUSTED ADMINISTRATIVE
REMEDIES; PLAINTIFF HAS ALSO FAILED TO PROVE INTENTIONAL
DISCRIMINATION BASED ON RACE, DISCRIMINATION THAT WAS SEVERE OR
PERVASIVE, AND WOULD AFFECT A REASONABLE PERSON UNDER LIKE
CIRCUMSTANCES .....................................................................................................13

### ARGUMENT IV

PLAINTIFF'S CLAIM OF RETALIATION IS PROCEDURALLY BARRED BECAUSE
PLAINTIFF HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES NOR HAS THE
CLAIM BEEN SPECIFICALLY PLED IN THE COMPLAINT; PLAINTIFF HAS ALSO
FAILED TO PROVE ANY CAUSAL CONNECTION BETWEEN HIS ACTIVITY AND THE
EMPLOYMENT ACTION OF THE DEFENDANT....................................................19

CONCLUSION............................................................................................................24

## TABLE OF AUTHORITIES

*Abramson v. William Paterson Coll.,* 260 F.3d 265 (3d Cir. 2001) ...............................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................6

*Antol v. Perry*, 82 F.3d 1291 (3d Cir. 1996) .........................................................14, 20

*Arasteh v. MBNA America Bank*, 146 F. Supp. 2d 476 (D. Del. 2001) ..................17, 23

*Burns v. Potter*, 2007 WL 406201, (M.D. Pa. Feb. 2, 2007) ........................................14

*Burton v. MBNA America Bank*, 2005 WL 1463533 (D. Del. June 22, 2003) ..............22

*Burlington Indus. v. Ellreth*, 524 U.S. 742, 761 (1998) ...............................................23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................6

*Clark County School District v. Breeden*, 532 U.S. 268 (2001) ...................................22

*Faragher v. Boca Raton*, 524 U.S. 775 (1998) ......................................................17, 18

*Fatir v. Dowdy*, 2002 WL 2018824 (D. Del. Sept. 4, 2002) .........................................20

*Gadson v. City of Wilmington Fire Dept.*, 478 F. Supp. 2d 635 (D. Del. 2007) .......8, 14

*Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313 (3d Cir. 2000) .........................9

*Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107 (3d Cir. 1996) .............6

*Hitchens v. Montgomery County*, 2008 WL 2081270 (3d Cir. May 19, 2008) ..............18

*Jensen v. Potter*, 435 F.3d 444 (3d Cir. 2006) .............................................................15

*Jones v. School Dist. of Philadelphia,* 198 F.3d 403 (3d Cir.1999) .............................21

*Ledbetter v. Goodyear*, 127 S. Ct. 2162 (2007) .............................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ......................7

*Maull v. Division of State Police*, 141 F. Supp. 2d 463 (D. Del. 2001) ..........................9

*Moon v. Delaware River Bay Auth.*, 2006 WL 462551 (D. Del. Feb. 24, 2006) ......13, 14

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...............7, 8, 13,14

*O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006)............................................................8

*Palmatier v. Michigan Dept. of State Police*, 981 F. Supp. 529 (W.D. Mich. 1997) ...................20

*Paris v. Christiana Care Visiting Nurse Ass'n*, 197 F. Supp. 2d 111 (D. Del. 2002)....................18

*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612 (7th Cir. 2000).......................................................9

*Taylor v. Proctor & Gamble Dover Wipes*, 184 F. Supp. 2d 402 (D. Del. 2002)
    *aff'd*, 53 Fed. Appx. 649 (3d Cir. 2002)...................................................................................9

*Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984) ..................................................................13, 20

*West v. Philadelphia Electric Co.*, 45 F.3d 744 (3d Cir. 1995) .......................................................8

*Velasquez v. Frapwell*, 165 F.3d 593 (7th Cir. 1999)...................................................................21

*Zalewski v. M.A.R.S. Enterprises, Ltd.*, 561 F. Supp. 601 (D. Del. 1982).....................................14

Statutes and Other Authorities

Eleventh Amendment of the United States Constitution ...............................................................20

Uniformed Services Employment and Reemployment Rights Act,
    38 U.S.C. § 4301 *et seq.*........................................................................................... 19-21

42 U.S.C. § 2000e-5(e)(1).................................................................................................3, 7, 13, 19

Pub. L. No. 105-368 (Nov. 11, 1998) .............................................................................................20

Fed. R. Civ. P. 56(c) .........................................................................................................................6

## NATURE AND STAGE OF THE PROCEEDINGS

On July 22, 2003, plaintiff filed a charge of Discrimination with the Delaware Department of Labor ("DDOL") (A-19).  Plaintiff received his Right to Sue letter from the DDOL on December 20, 2004.  (A-20).  The EEOC issued a Right to Sue letter on May 8, 2006. (A-21).

On August 6, 2006, plaintiff commenced this action by filing a complaint. (D.I. 1) (A-1). On September 22, 2006, defendant answered the complaint and asserted a number of defenses. (D.I. 4).  The case was stayed from November 16, 2006 through October 17, 2007.  On December 28, 2007, the Court entered a Scheduling Order. (D.I. 12).  The Court's Scheduling Order provided for a discovery deadline of July 15, 2008.  On July 10, 2008, the Court granted the plaintiff's motion to amend the Scheduling Order and extended the discovery deadline to August 15, 2008.

This is the defendant's Opening Brief in support of summary judgment.

## SUMMARY OF THE ARGUMENT

### I

Plaintiff's claim of discrimination based on the denial of a promotion is time-barred under Title VII because the alleged violation occurred more than 300 days before he filed a complaint with the Delaware Department of Labor.

### II

Defendant is entitled to summary judgment on plaintiff's claim of disparate discipline as there is no evidence that comparable non-members of the protected class were treated more favorably.

### III

Plaintiff's claim of hostile work environment is procedurally barred because plaintiff has not exhausted his administrative remedies; Plaintiff has also failed to prove intentional discrimination based on race, failed to prove discrimination that was severe or pervasive, and would affect a reasonable person under like circumstances.

### IV

Plaintiff's claim of retaliation is procedurally barred because he has not exhausted his administrative remedies nor has he specifically pled the claim in the Complaint; plaintiff has also failed to prove any causal connection between his activity and the employment action of the defendant.

## STATEMENT OF THE FACTS

In 1993, plaintiff commenced employment with the State of Delaware, Division of Youth and Rehabilitative Services ("DYRS").  (Plaintiff's Answers to Interrogatories) (A-14).  Since 1992, plaintiff, a white male, has been employed as a Youth Rehabilitation Counselor ("YRC") at the Stevenson House in Milford, DE. The Stevenson House is a secure juvenile detention facility that houses male and female residents who are awaiting trial or sentencing on criminal offenses.  Plaintiff currently holds the position of YRC II.[1]

In his Complaint, plaintiff, a white male, alleges that he has been turned down for promotions while applicants with lesser qualifications and experience have been promoted, in violation of Title VII, 42 U.S.C. § 2000.  Complaint at ¶¶1, 4, 10 (A-7).  Plaintiff alleges that the successful applicants for these posted promotions "were all of black descent, and had sex a number of times with defendant Rigsby whom was a Supervisor of the Stevenson House at the time." *Id*. at ¶11.[2]  Plaintiff also alleges that he was treated differently than similarly situated African-American females in terms of discipline imposed for an incident at the Stevenson House. *Id*. at ¶12.  Plaintiff claims that, after Rigsby was forced to leave the Stevenson House because of improper actions, "the environment under Superintendent Christopher Stetzer has not improved the situation." *Id*. at ¶¶13-14.[3]  The plaintiff's Complaint contains no specifics in term of dates of any alleged  discriminatory acts.

---

[1.]  Plaintiff's job description is set forth in defendant's appendix at A-31.

[2.]  The Complaint alleges that Rigsby is "a black male, in the past and for times relevant, was an employee of [DYRS] as Superintendent of the Stevenson House."  Complaint at ¶5.  Rigsby was originally named as a defendant in this case but was dismissed as a party by the Court on October 26, 2007 (D.I. 9).

[3.]  In his Complaint, plaintiff states that he has not set forth "a complete recitation of all of the racially and sexually discriminatory actions by the Defendants but are illustrative of their behavior."  Complaint at ¶16.  The plaintiff has not moved at any time to amend the allegations in the Complaint.

In discovery, the defendant requested that the plaintiff provide the complete factual basis for each allegation and identify all persons with knowledge and all documents or other items of evidence that relate to each claim. The plaintiff responded as follows:

Plaintiff, a white male was denied a promotion and suspended for five (5) days because of his race and sex…. In July 2000, Plaintiff applied for a supervisor position. Plaintiff was denied his position because of his race and/or sex. The two black females hired instead of the Plaintiff received preferential treatment because of their race and sex. The evidence shows that Plaintiff has been employed by the DYRS since February, 1992 and has a Bachelor's Degree. In contrast, the successful candidate began her employment with DYRS on December 22, 1997 as a Youth Care Worker. Other than a few courses in criminal justice, the successful appointee had no college degree. In addition, the evidence will show that the majority of employees promoted to supervisory roles at the Stevenson House were black females. The black females were given preference by the black superintendent Edward Rigsby and later Greg Fuller. The two successful black females Rewa Powell Mack candidate [sic] had an ongoing secret affair with the superintendent and received special treatment after her hiring. In additional, another successful black female Alfreda Russ received special treatment and was found to have committed fraud after her hiring. As a result of these actions and other corrupt conduct, Rigsby voluntarily resigned his position.

Plaintiff has also suffered disparate treatment and retaliation because of his race and/or gender and because of complaining of discrimination based on his race and/or gender. During a private telephone conversation, the plaintiff was accused of making sexist remarks. As a result, the plaintiff was initially suspended for five (5) days. Alternatively, a black female who called a supervisor a "sorry bastard" was simply given a correction letter. In another situation, a black female who committed fraud was only given a three (3) day suspension.

In addition, the plaintiff suffered from a hostile work environment based on race and/or gender during his tenure of employment. These incidents included the leaving of racially motivated email in plaintiff's work space. As a result of defendant's inaction concerning plaintiff's complaints of racial harassment, the plaintiff was forced to transfer to another shift. In addition, black employee continually made threatening statements to the plaintiff with racial overtones and trash was left in plaintiff's vehicle while at work.

Further, plaintiff was retaliated against during future promotions because of his past complaints of discrimination. For instance, in February 3, 2003, the plaintiff was rejected for another supervisor position in favor of an inferior candidate in close proximity to his filing a charge of discrimination with the Department of Labor. In addition, the defendant retaliated against the plaintiff by not following procedures concerning his application for a promotion during his time stationed in Iraq by denying him an opportunity to apply for a supervisor

4

position.  The plaintiff was also retaliated against by supervisor and co-workers for lodging complaints of discrimination.

Plaintiff's Amended Answers to Defendant's Interrogatories (A-14).

On July 22, 2003, plaintiff filed a Charge of Discrimination with the DDOL (A-19).  In his charge, plaintiff only alleged discrimination based on race.  The plaintiff's Charge raises the allegation of being denied a promotion in July, 2000 for a Supervisor job at Stevenson House which was awarded allegedly to Alfreda Russ who is an African-American female.  The Charge also raises the claim of disparate discipline regarding the plaintiff's discipline for comments made while using his employer's phone.  The Charge contains no mention of a claim of hostile work environment nor does it mention any claim of retaliation.  The DDOL issued a Final Determination and Right to Sue Notice on December 20, 2004.  (A-20).  The Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter on May 8, 2006.  (A-21).

## ARGUMENT I

**PLAINTIFF'S CLAIM OF DISCRIMINATION BASED ON THE DENIAL OF A PROMOTION IS TIME BARRED UNDER TITLE VII BECAUSE THE ALLEGED VIOLATION OCCURRED MORE THAN 300 DAYS BEFORE HE FILED A COMPLAINT WITH THE DELAWARE DEPARTMENT OF LABOR.**

**(a)     Introduction**

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "may reasonably be resolved in favor of either Party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986). The moving party bears the initial burden of demonstrating the absence of material issues of fact. *Celotex Corp.*, at 323. However, the moving party need not support its motion with affidavits or other documents disproving the nonmoving party's claim, but need only "show - - that is point out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The nonmoving party must go beyond the pleadings and through affidavits or other evidence demonstrate the existence of a genuine issue of material fact. *Id.* at 314. The district court is required to construe the evidentiary record so as to give the nonmoving party reasonable factual inferences. *Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir. 1996). Summary judgment should be granted if the court

finds, after considering all of the evidence, that no reasonable trier of fact could find for the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

      For the reasons that follow, the defendant is entitled to judgment as a matter of law as to

plaintiff's Title VII claims.

      **(b)**    <u>**Title VII Claim is Time-Barred**</u>

      Under Title VII, a plaintiff "shall" file an employment discrimination charge with the

EEOC within 300 days after an "alleged unlawful employment practice occurred."  42 U.S.C. §

2000e-5(e)(1); *Ledbetter v. Goodyear*, 127 S. Ct. 2162 (2007); *National Railroad Passenger

Corp. v. Morgan*, 536 U.S. 101, 109 (2002).  The legal analysis for a discrimination claim under

Title VII is well-settled.  The plaintiff alleges discrimination by his employer's decision in July

2000 to deny him a promotion.  The denial of this promotion is a distinct allegation of an

unlawful employment practice under Title VII which triggered the 300 day clock to file a charge

with the Delaware Department of Labor ("DDOL").  *See Morgan*, *supra*, 536 U.S. at 113-14

("[e]ach discrete discriminatory act starts a new clock for filing charges"; failure to promote is a

discrete employment decision that is easy to identify).

      The plaintiff filed his DDOL charge on July 22, 2003 regarding the denial of a promotion

that occurred some time in July, 2000.  The DDOL charge was filed almost three years after the

alleged unlawful employment practice and as such is time-barred by the 300 day statute of

limitations imposed by Title VII.

      **(c)**    <u>**No Continuing Action to Toll Statute of Limitations**</u>

      Plaintiff Powell checked the box on the DDOL Charge form that provides "continuing

action."  Plaintiff does not specify any continuing action in the EEOC charge.  While the EEOC

Charge does contain a claim regarding disparate discipline that is timely filed, that fact does not

render the claim regarding the denial of a promotion from 2000 to be timely.

The continuing violation doctrine is an "equitable exception to the timely filing requirement." *West v. Philadelphia Elec. Co*., 45 F.3d 744, 754 (3d Cir. 1995). This Court considered this issue in *Gadson v. City of Wilmington Fire Dept*., 478 F. Supp. 2d 635 (D. Del. 2007). In *Gadson*, the plaintiffs argued that their untimely failure to promote claim was properly filed since they had filed a disparate discipline claim within the 300 day EEOC filing period. *Id*. at 641-42. The Court ruled that the failure to promote claim was a discrete act and the statute of limitations began to run at the time that the act occurred. *Id*. at 642 (citing *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (quoting *National Railroad v. Morgan*, 536 U.S. 101 (2002)). Under the holdings in *Gadson* and *Morgan*, the continuing violation rule does not apply to plaintiff's claim regarding failure to promote from 2000. Therefore, the plaintiff's Title VII discrimination charge is time-barred.

## ARGUMENT II

**DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM OF DISPARATE DISCIPLINE AS THERE IS NO EVIDENCE THAT NON-MEMBERS OF THE PROTECTED CLASS WERE TREATED MORE FAVORABLY**

Plaintiff alleges that he was the subject of an adverse employment action based on race when he received a written reprimand in 2003.  The Third Circuit has held that to establish a *prima facie* case of racial discrimination under Title VII, the plaintiff is required to prove: "(1) he or she is a member of a protected class;  (2) he or she is qualified for the former position; (3) he or she suffered an adverse employment action; and (4) either non-members of the protected class were treated more favorably than the plaintiff, or the circumstances of the plaintiff's termination give rise to an inference of race discrimination."[4] *Taylor v. Procter & Gamble Dover Wipes*, 184 F. Supp. 2d 402, 409 (D. Del. 2002), *aff'd*, 53 Fed. Appx. 649 (3d Cir. 2002), (citing *Goosby v. Johnson & Johnson Med., Inc*., 228 F.3d 313, 318-19 (3d Cir. 2000)).  In evaluating a claim of disparate discipline, the *Taylor* Court noted that when reviewing "comparators", "the acts of non-minority employees must be of 'comparable seriousness'" if the failure to discharge those employees is being proffered as proof of discriminatory intent.  *Id*. at 410.  The Court has also held that "when employment decisions concerning different employees are made by different supervisors, such decisions are seldom sufficiently comparable to raise an inference of discrimination because different supervisors may exercise their discretion differently."  *Id*. (citing *Maull v. Division of State Police*, 141 F. Supp. 2d 463, 483 (D. Del. 2001) (citing *Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 618 (7th Cir. 2000))).

In June, 2003, plaintiff was cited by Superintendent Chris Stetzer, a white male, for an

---

[4].  Part 2 of the *Goosby* test is inapplicable to the instant claim as plaintiff's claim does not involve qualification for a specific position but rather is limited to an allegation of racially discriminatory discipline.

incident in which Mr. Powell engaged in improper and unprofessional behavior while employed at the Stevenson House. (A-22). The plaintiff was present in the Admissions Office of the facility and was talking on the phone with the Union President Dennis Bassett. During the course of this conversation, plaintiff was heard by nearby staff referring to female staff at the Stevenson House as "lazy fucking bitches." An employee in the nearby glass-enclosed Control Room heard the plaintiff make this statement on more than one occasion during this phone call. Plaintiff's supervisor Greg Ward at some point during the phone call observed the plaintiff appear to be very agitated. *McIlvain Deposition Exhibit #3* (A-41). Mr. Ward confronted the plaintiff after the conclusion of the phone call and told the plaintiff that profanity was not permitted in the work place. Mr. Ward never referred this incident to Human Resources. *Ward Deposition* at 11-12 (A-37). However, the Department's Human Resources Office did receive an Affirmative Action Complaint against the plaintiff and Mr. Ward related in part to this incident. As a result of the investigation, the plaintiff's conduct was substantiated. The Superintendent Stetzer proposed a five day period of suspension based on the severity of the plaintiff's conduct. (A-22).

The plaintiff then asked for and received a meeting in Legislative Hall with State Representative Wally Caulk. At this meeting on July 17, 2003, plaintiff was present along with a union representative, Representative Caulk, Karen Smith of the Defendant's Human Resources Office, and Nancy Pearsall, then Director of the Defendant. All of the parties at the meeting agreed that the plaintiff's discipline would be reduced to a written reprimand. On July 23, 2003, then Director Pearsall, an African-American female, sent the plaintiff stating that his discipline would be reduced based on his apology and based on another incident in which a different employee received a letter of instruction from her supervisor. (A-24)

Plaintiff's claim appears to be based in part on a letter of instruction given to a Shavaughn Floyd, an African-American female, at some time prior to December, 2002. Ms. Floyd was cited by her supervisor Mr. Ward when she arrived late for work and referred to Mr. Ward as a "sorry bastard" in front of other employees. The record indicates that Mr. Ward gave Ms. Floyd this discipline on his own initiative without consulting with the Department's Human Resources Office. Mr. Ward did discuss the matter with then-Superintendent Stetzer. *Ward Depo. at* 21-24 (A-38-39).

Plaintiff also cites to a three day suspension given to another employee, Nadine Scurry, an African-American female, for misuse of a State issued cell phone. This discipline was imposed by Division Director Henry Smith on April 17, 2003. (A-25).

The plaintiff's claim for racially based discipline is legally deficient for two reasons. First, the disciplinary cases of Ms. Floyd and Ms. Scurry are not valid comparators. Neither of these two employees was disciplined by Director Pearsall who issued a written reprimand to the plaintiff. Ms. Floyd received her written letter of instruction from her immediate supervisor Greg Ward. Ms. Scurry received her three day suspension from Mr. Henry Smith, then the Division Director. Based on this record, the plaintiff cannot establish a *prima facie* case that these representatives of the employer all acted on the basis of race in imposing the different penalties for these offenses.

Second, the disciplinary acts are different and defy clear comparison amongst the employees. With respect to Ms. Scurry, her offense involved misuse of State property and she actually received a <u>more severe</u> penalty than the plaintiff for her offense. Regarding the plaintiff's offense, the State policy was to follow a program of progressive discipline but to also obviously consider the nature and seriousness of the conduct in imposing a penalty. The range

11

of possible penalties was from a letter of instruction (which was considered informal discipline),

written reprimand, suspension, and termination. *Karen Smith Depo*. at 64-65 (A-36). The

plaintiff's written reprimand was within the discretionary range of possible penalties for his

profane outburst which was directed at all of the female employees at the facility. This conduct

resulted in a formal complaint being filed with the Department's Human Resources Office. The

imposition of the written reprimand was essentially a slap on the wrist for the plaintiff's

unprofessional, improper conduct.

      The plaintiff's reliance on the conduct of Shavaughn Floyd is misplaced. Ms. Floyd's

conduct was directed at her own supervisor Mr. Ward. Mr. Ward had just advised Ms. Floyd

that she would be docked for being late and Ms. Floyd responded by calling him a "sorry

bastard." Mr. Ward, in exercising his discretion, believed that a letter of instruction was an

appropriate sanction.

      Therefore, the plaintiff has failed to establish a *prima facie* claim of disparate discipline

and the defendant is entitled to summary judgment on that claim.

<u>ARGUMENT III</u>

**PLAINTIFF'S CLAIM OF HOSTILE WORK ENVIRONMENT IS PROCEDURALLY BARRED BECAUSE PLAINTIFF HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES; PLAINTIFF HAS ALSO FAILED TO PROVE INTENTIONAL DISCRIMINATION BASED ON RACE, DISCRIMINATION THAT WAS SEVERE OR PERVASIVE, AND WOULD AFFECT A REASONABLE PERSON UNDER LIKE CIRCUMSTANCES.**

**(a)     <u>Failure to Exhaust Administrative Remedies</u>**

Plaintiff's Charge filed with the DDOL on July 22, 2003 does not raise any allegation regarding a hostile work environment claim at the Stevenson House.  (A-19).  The DDOL Charge merely raised claims regarding the failed promotion in 2000 and the disparate discipline claim, previously addressed in Arguments I and II of this Brief.

The plaintiff was required under 42 U.S.C. § 2000e-5(e)(1) to file a charge of hostile work environment within 300 days of the alleged unlawful employment practice prior to commencing a federal suit on such a claim.  *National Railroad v. Morgan*, *supra*, 536 U.S. at 109.  The Third Circuit has held that "[t]he relevant test in determining whether the appellant was required to exhaust her administrative remedies, therefore, is whether the acts alleges in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."  *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).  *See also Moon v. Delaware River Bay Auth.*, C.A. No. 05-261-JJF, 2006 WL 462551 at *2 (D. Del. Feb. 24, 2006) (ambit of civil complaint is defined by scope of EEOC investigation which can be reasonably expected from the charge regardless of scope of actual investigation).

The plaintiff's alleged claim of hostile work environment is separate and distinct from the claim of disparate discipline which was timely filed with the DDOL.  The disparate discipline claim deals with the plaintiff's allegation that he received a disproportionate penalty for a single act in July 2003.  This is a claim involving a "discrete" act which is distinguishable from a claim

13

of hostile work environment.  *See Gadson*, *supra*, 478 F. Supp. 2d at 635 (allegation of wrongful discipline is a discrete act under *Morgan*).  The Supreme Court in *Morgan* has noted that "[h]ostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Morgan*, *supra*, 536 U.S. at 116.

 The plaintiff's Complaint contains a rather vague allegation that the plaintiff was subject to unwelcome sexual and racial harassment and that the defendant took no actions to stop the inappropriate behavior or protect the plaintiff.  Complaint at ¶18 (A-10).  The nebulous nature of the plaintiff's hostile work environment is completely different and distinct from a specific DDOL complaint about a specific act of discipline for a single event.  The DDOL and EEOC investigations could not have reasonably been expected to address any of the plaintiff's allegations of hostile work environment.  *See Burns v. Potter*, C.A. No. 04-2793, 2007 WL 406201 at *7 (M.D. Pa. Feb. 2, 2007) (plaintiff's claim of hostile work environment was not within scope of gender discrimination EEOC Complaint); *Moon*, *supra*, at *3 (there was not a close nexus between the plaintiff's hostile work environment claim and the claims of unlawful discrimination in failure to promote which was within EEOC Complaint); *Zalewski v. M.A.R.S. Enterprises, Ltd.*, 561 F. Supp. 601, 605 (D. Del. 1982) (plaintiff's claim of sexual harassment asserted in federal complaint for the first time was not related to EEOC complaint alleging sexual discrimination ).  Therefore, the plaintiff has failed to exhaust his administrative remedies and prevented the parties the opportunity to settle the dispute outside of court.  *See Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).

**(b)**     **Plaintiff has failed to establish a *prima facie* case of a hostile work environment.**

Plaintiff's allegations of a hostile work environment fail to establish the requirements for such a claim under the objective standard of review used in the Third Circuit.  To prove this claim, the plaintiff must show that: "(1) [h]e suffered intentional discrimination because of [his] protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [him]; (4) it would have detrimentally affected a reasonable person in the circumstances; and (5) a basis for employer liability is present."   *Jensen v. Potter*, 435 F.2d 444, 449 (3d Cir. 2006).

In his deposition testimony, plaintiff described his hostile work environment claim to be "throwing trash in my vehicle, leaving literature around, talking about why white women like black men and how black women are so powerful that black men can't control them.  There was some black religious materials left in my mailbox, in my work station."  *Powell Depo*. at 37-38 (A-33-34).  The plaintiff has attempted in discovery to bolster this rather vague description of his claim with certain documents which are listed as follows:

a.     8/27/03 E-mail titled "Angry White Girl to Black Men" printed off the computer of employee Charlotte Boone which plaintiff found at the workstation shared with Ms. Boone.  *Ward Depo. Ex. D* (A-49).

b.     Undated document titled "Who am I?" which may have been posted on the Bulletin Board of the Girls' Unit.  *Ward Depo. Ex. E* (A-52); *Ward Depo*. at 71 (A-40).

c.     December 3, 2003 E-mail titled "Black Mama" sent by employee Martina Duffy to other employees (but not plaintiff).  *Ward Depo. Ex. F* (A-56).

15

d.      January 26, 2004 E-mail from Plaintiff describing how trash had been thrown into the bed of his pickup truck parked in the open parking lot. *Ward Depo. Ex. H* (A-59).

e.      January 28, 2004 E-mail from Plaintiff complaining about a comment made by another employee Mr. Whidbee to another employee Ms. Coleman that "this was not 1940 any more and this was not Mississippi." *Ward Depo. Ex. I* (A-60). Plaintiff asserts that he was present during this conversation although no statements were directed at him.

f.      February 12, 2004 E-mail from Plaintiff complaining about a comment made by a resident in custody about racism amongst the white staff. The statement was not made by an employee and was not directed at the Plaintiff who merely overheard the comment from a nearby office. *Ward Depo. Ex. J* (A-61).

g.      February 25, 2004 E-mail from Plaintiff complaining about comments made by Jeffrey Atkins which were designed to undermine staff and inflame the situation. *Ward Depo. Ex. G* (A-58).

h.      February 25, 2005 Chain e-mail from a Machika Thomas containing religious material. Superintendent Stetzer indicates that he will reaffirm the policy that such e-mails are inappropriate. *Powell Depo. Ex. 3* (A-42).

The plaintiff's deposition testimony and this documentary evidence fail to establish the necessary elements for a hostile work environment claim. First, the evidence does not show intentional discrimination because of race. Most of the e-mail material previously listed above was not even directed at the plaintiff. The record appears to show the material was either inadvertently left at work stations or posted on a bulletin board. The January 26, 2004 e-mail

16

about trash in the bed of plaintiff's open pickup fails to explain who left the trash and how that act is in any way racially-motivated. In his January 28, 2004 and February 12, 2004 e-mails, plaintiff complains about comments made by another person to another employee which he overheard. There is no evidence that these comments were intentionally made toward the plaintiff because of his race. The February 25, 2004 e-mail by the plaintiff about Mr. Atkins complains about the content of his statement which could undermine staff; however, the e-mail fails to specify even what comments were made or how they were racially motivated. The February 25, 2005 e-mail is simply an inappropriate chain e-mail sent to many employees in the building and which contains information about religion, not race.

Second, the plaintiff can not show that discrimination was severe or pervasive. The list of isolated e-mails and comments previously described do not show discrimination directed toward the plaintiff, let alone severe or pervasive discrimination. In addition, the record does not contain evidence that there was discrimination that would affect a reasonable person of the plaintiff's race in like circumstances. The e-mails listed above deal with issues of race and may be inappropriate for an employee's computer. However, the material cannot fairly be read as racially hostile or racially discriminatory in nature. The plaintiff's claim that someone put trash in the bed of his open pickup truck can not reasonably be found to be racially motivated. Moreover, the plaintiff's reactions to comments directed to other employees do not establish a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("'simple teasing", offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment")); *see also Arasteh v. MBNA America Bank*, 146 F. Supp. 2d 476, 495-96 (D. Del. 2001) (plaintiff's claims of hostile work environment did not prove pervasive or regular sexual harassment where much of complained of conduct was not explicitly

17

sexual); *Paris v. Christiana Care Visiting Nurse Ass'n*, 197 F. Supp. 2d 111, 118-19 (D. Del. 2002) (plaintiffs' hostile work environment complaint regarding six incidents over a four month period did not constitute pervasive harassment, comments were not severe in nature, and did not interfere with employee's ability to perform job).

Plaintiff's claim is also deficient because there is no proof of a basis for employer liability. None of the conduct previously set forth can be attributed to the act of the plaintiff's supervisor or a successively higher authority over the employee. *See Hitchens v. Montgomery County*, 2008 WL 2081270, No. 06-4819, at * 2 (3d Cir. May 19, 2008) (citing *Faragher, supra*, 524 U.S. at 807). Plaintiff's allegations appear to pertain to acts by other non-supervisory employees. Plaintiff's claim also fails because the employer did take reasonable steps to formally investigate and address plaintiff's concerns. The defendant's Human Resources Office conducted an investigation into plaintiff's allegation about highly offensive racial e-mails. *Smith Depo. at 18-19* (A-35). The investigation did not confirm the plaintiff's allegations and instead merely found that Ms. Boone had printed out the August 27, 2003 e-mail as part of a school project and had left it on a desk. *Smith Deposition at 20* (A-35). This investigation was conducted by the defendant pursuant to a formal policy prohibiting discrimination. (A-27). With respect to the February 25, 2005 chain e-mail, there is a notation on the e-mail from Superintendent Chris Stetzer that he would send out a global e-mail on the appropriate use of the defendant's e-mail system. (A-42).

Therefore, the defendant is entitled to summary judgment on the plaintiff's claim of hostile work environment.

## ARGUMENT IV

**PLAINTIFF'S CLAIM OF RETALIATION IS PROCEDURALLY BARRED BECAUSE PLAINTIFF HAS NOT EXHAUSTED ADMINISTRATIVE REMEDIES NOR HAS THE CLAIM BEEN SPECIFICALLY PLED IN THE COMPLAINT; PLAINTIFF HAS ALSO FAILED TO PROVE ANY CAUSAL CONNECTION BETWEEN HIS ACTIVITY AND THE EMPLOYMENT ACTION OF THE DEFENDANT.**

**(a)    Procedural Bars**

In the Complaint, plaintiff asserts a claim in Count III for Retaliation which contains general allegations of discrimination and sexual harassment based on his filing of a Charge of Discrimination.  Complaint at ¶¶32-34 (A-12).  The Complaint is limited to allegations of promotions granted to female African-American employees during the tenure of Superintendent Edwin Rigsby.  Complaint at ¶11 (A-9).  In response to discovery, plaintiff in discovery answers sent on the last day of the discovery period, now asserts that the defendant's retaliation consisted of rejecting the plaintiff for a supervisor job in February, 2003.  (A-14).  Plaintiff also claims for the first time that he was denied a promotion during his time stationed in Iraq as retaliation by the defendant.[5]  (A-16).  Plaintiff further alleges in general terms that he was retaliated against by supervisors and co-workers, none of whom are named in either the Complaint or the Answers to Interrogatories.  (A-16).

The defendant reasserts the argument sent forth in Argument III of this brief.  The plaintiff's claims of retaliation are procedurally barred as those claims are not within the scope of the DDOL charge filed on July 22, 2003.  The plaintiff was required under 42 U.S.C. § 2000e-5(e)(1) to file a charge of hostile work environment prior to commencing a federal suit on such a

---

[5].  Although plaintiff submits no time period for this claim, defendant believes plaintiff's claim involves a 2006 position for which there is an ongoing grievance process.  Defendant has cited the Uniformed Services Employment and Reemployment Rights Act, § 4311(a) in that grievance process.

claim within 300 days.  Under the Third Circuit's holding in *Waiters*, the plaintiff's allegations of

denial of promotions are distinct acts that would not be within the scope of the prior EEOC

complaint or investigation.  *Waiters*, *supra*, 729 F.2d at 237.  Therefore, the plaintiff has failed to

exhaust his administrative remedies and prevented the parties the opportunity to settle the dispute

outside of court.  *See Antol, supra,* 82 F.3d at 1296.

       In addition, the attempt by plaintiff to now raise claims regarding a 2003 promotion and a

2006 opportunity to apply for a job are not raised in the Complaint and should not now be

allowed consideration for summary judgment.  The plaintiff at no time moved to amend the

original Complaint which was filed on August 6, 2006.  The Court should not allow the plaintiff

to attempt to amend his Complaint by way of filing interrogatory responses on the eve of the

discovery deadline.  *See generally Fatir v. Dowdy*, C.A. No. 95-677-GMS, 2002 WL 2018824 at

*8 (D. Del. Sept. 4, 2002) (filing of motion to amend after opponent has filed summary judgment

raises inference that plaintiff is attempting to bolster his case and avoid summary judgment,

which is an unacceptable reason to permit an attempt to amend).  Since the plaintiff has never

even moved to amend the Complaint, defendant moves for judgment on plaintiff's claims of

retaliation based on failure to promote in 2003 and failure to interview in 2006.

       Finally, the plaintiff's attempt to by way of interrogatory answer to now assert a claim

under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38

U.S.C. §§ 4301 *et seq*., against the State of Delaware is barred by the Eleventh Amendment.  *See*

*Palmatier v. Michigan Dept. of State Police*, 981 F. Supp. 529, 530-31 (W.D. Mich. 1997)

(Congress did not abrogate the states' Eleventh Amendment immunity in enacting USERRA).  In

addition, Congress in 1998 amended USERRA by Pub. L. No. 105-368 (Nov. 11, 1998) to now

provide that only state courts have jurisdiction over suits filed by a party against a state

employer.  *See Velasquez v. Frapwell*, 165 F.3d 593, 594 (7th Cir. 1999).  Therefore, plaintiff

may not assert a USERRA claim in this action in this Court.

> **(b)**    **Plaintiff's retaliation claim fails to prove a causal connection between filing the DDOL Complaint and any adverse employment action.**

The plaintiff also contends that the defendant retaliated against him based on the filing of

his DDOL Charge of Discrimination on July 22, 2003.  In a retaliation claim under Title VII , a

plaintiff must show that: (1)  he engaged in a protected activity; (2) the employer took an adverse

employment action against him after or contemporaneous with the protected activity; and (3) that

there is a causal link between his participation in the protected activity and the adverse

employment action.  *See Abramson v. William Paterson Coll. of N.J.,* 260 F.3d 265, 286 (3d Cir.

2001);  *Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999).  In this case,

defendant does not dispute that the plaintiff engaged in protected activity when he filed his

Charge with the DDOL.  There is no proof, however, that the defendant took an adverse

employment action against the plaintiff that was causally linked to the filing of the DDOL

Charge.

The gist of plaintiff's retaliation claim appears to be that the defendant hired Donald

McIlvain, another YRC II, to a supervisor position in 2003.  Mr. McIlvain, a white male, was

chosen for the job from a certified list of candidates that included the plaintiff.  In his

interrogatory responses, plaintiff asserts that this selection took place on February 3, 2003, in

"close proximity" to the time of plaintiff's filing a discrimination charge.  This argument is

simply incorrect since the plaintiff did not file his DDOL Charge until July 22, 2003.  There is

simply no way the defendant could retaliate against the plaintiff in February, 2003 by denying

him a promotion based on a DDOL Charge that had not been filed.

21

The record evidence reflects that the 2003 Supervisor interviews were conducted in September, 2003.  (A-61).  Even with this correction in the timing, the plaintiff cannot show that the defendant's decision to promote Mr. McIlvain was in retaliation for the plaintiff's earlier DDOL Charge.  The Superintendent Chris Stetzer made the decision on this supervisor job and believed that Mr. McIlvain was a better candidate based on his answers during the interview process.  *Stetzer Depo. Testimony* 41-42 (A-86-87); *Interview Questions and Answers* (A-65). Even more importantly, Mr. Stetzer testified that he did not even <u>know</u> that the plaintiff had filed a DDOL Charge at the time of the McIlvain promotion.  Mr. Stetzer testified that he first became aware that the plaintiff had filed a DDOL Charge when the plaintiff posted his Right to Sue letter on a bulletin board in the Stevenson House.  *Stetzer Depo. Testimony* at 37-38 (A-85-86). Plaintiff did not receive his Right to Sue letter from the DDOL until December 20, 2004, long after the decision in October, 2003 to fill the supervisor's job.  (A-20).

Plaintiff's vague reference in his interrogatory answer to "close proximity" without more fails to establish a *prima facie* case of retaliation.  Such an argument has been repeatedly rejected by this Court.  *See Burton v. MBNA America Bank*, C.A. No. 03-915 GMS, 2005 WL 1463533 at *5 (D. Del. June 22, 2005) (rejecting plaintiff's reliance "on a post hoc, ergo propter hoc inference from the fact that the restriction was imposed after [she] filed her complaint"); *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (temporal proximity of protected conduct and employer's act must be "very close" in time to establish *prima facie* case; plaintiff failed to establish retaliation claim where supervisor had no knowledge of lawsuit at the time of employee's transfer). The passing of some two to three months between the plaintiff's DDOL Charge and the promotion of another employee other than plaintiff does not meet the standard for unusually suggestive timing.  Moreover, the plaintiff has not produced evidence in

22

the record of any indirect pattern of antagonism on the part of the defendant or the defendant's employees between the period of July 22, 2003 and September, 2003. The defendant has articulated non-retaliatory reasons for hiring Mr. McIlvain and has also produced clear evidence that the hiring employee had no knowledge of the plaintiff's DDOL charge. On this record, plaintiff cannot establish a *prima facie* claim of retaliation.

Plaintiff also makes a vague reference in his complaint and in his amended interrogatory answers to retaliation and harassment by some unnamed supervisor or unnamed co-workers. This vague reference fails to state a claim since, aside from lacking specifics, the claim also fails to allege that the plaintiff suffered a specific adverse employment action as a result of this retaliation. *See Arasteh v. MBNA America Bank, supra,* 146 F. Supp. 2d at 496 (citing *Burlington Indus. v. Ellreth*, 524 U.S. 742, 761 (1998) ("[a] tangible employment action constitutes a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or decision causing a significant change in benefits"). This vague reference by plaintiff appears to refer to the conduct previously discussed in connection with his hostile work environment claim

Therefore, the Court should rule in favor of the defendant on the plaintiff's retaliation claim.

## <u>CONCLUSION</u>

For the above reasons, the defendant is entitled to summary judgment pursuant to Rule 56(c) as matter of law in this matter.

Respectfully submitted,

STATE OF DELAWARE
DEPARTMENT OF JUSTICE


/s/ Michael F. McTaggart
Marc P. Niedzielski (#2616)
Michael F. McTaggart (#2682)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendant