## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RICHARD W. POWELL,                          :
                                            :
       Plaintiff,                       :
                                            :
       v.                               :    C.A. No. 06-494-GMS
STATE OF DELAWARE,                          :
DIVISION OF YOUTH                           :
AND REHABILITATIVE SERVICES,                :
       Defendant.                       :


## DEFENDANT'S APPENDIX IN SUPPORT OF ITS

## MOTION AND OPENING BRIEF FOR SUMMARY JUDGMENT


**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

Marc P. Niedzielski (# 2616)
Michael F. McTaggart (#2682)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302)  577-8400
Attorneys for Defendant


DATED: August 29, 2008

## TABLE OF CONTENTS

DISTRICT COURT DOCKET . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A-1

COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A-7

PLAINTIFF'S AMENDED ANSWERS TO INTERROGATORIES . . . . . . . . . . . .    A-14

DDOL CHARGE OF DISCRIMINATION (7/22/03) . . . . . . . . . . . . . . . . . . . . . . .    A-19

DDOL RIGHT TO SUE LETTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A-20

EEOC RIGHT TO SUE LETTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A-21

LETTER TO PLAINTIFF PROPOSING SUSPENSION (6/7/03) . . . . . . . . . . . . .    A-22

LETTER TO PLAINTIFF ON WRITTEN REPRIMAND (7/23/03) . . . . . . . . . . .    A-24

LETTER TO NADINE SCURRY ON SUSPENSION (4/17/03) . . . . . . . . . . . . . .    A-25

DEFENDANT'S NON-DISCRIMINATION POLICY . . . . . . . . . . . . . . . . . . . . .    A-27

PLAINTIFF'S JOB DESCRIPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A-31

DEPOSITION TESTIMONY OF PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . .. . .    A-33

DEPOSTION TESTIMONY OF KAREN SMITH . . . . . . . . . . . . . . . . . . . . . . . . .    A-35

DEPOSITION TESTIMONY OF GREGORY WARD . . . . . . . . . . . . . . . . . . . . . .    A-37

McILVAIN DEPOSITION EXHIBIT #3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A-41

POWELL DEPOSITION EXHIBIT #3 (P00086) . . . . . . . . . . . . . . . . . . . . . . . . .    A-42

WARD DEPOSITION EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    A-49

CERTIFICATION LIST FOR 9/03 SUPERVISOR POSITION . . . . . . . . . . . . . . .    A-62

QUESTIONAIRES FOR 9/03 SUPERVISOR INTERVIEWS . . . . . . . . . . . . . . . .    A-66

DEPOSITION TESTIMONY OF CHRIS STETZER . . . . . . . . . . . . . . . . . . . . . . . .    A-85

CM/ECF LIVE - U.S. District Court:ded                                    Page1 of 6

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:06-cv-00494-GMS

Powell v. State of Delaware Division of Youth and Rehabilitative   Date Filed: 08/08/2006
Services et al                                                     Jury Demand: Plaintiff
Assigned to: Judge Gregory M. Sleet                                Nature of Suit: 440 Civil Rights: Other
Cause: 42:2000 Job Discrimination (Sex)                            Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Richard W. Powell**                      represented by  **Ronald George Poliquin**
                                                           Young, Malmberg and Howard, P.A.
                                                           30 The Green
                                                           Dover, DE 19901
                                                           (302) 672-5600
                                                           Email: rpoliquin@youngmalmberg.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**State of Delaware Division of Youth and**    represented by  **Laura L. Gerard**
**Rehabilitative Services**                                    Department of Justice
                                                               820 N. French Street, 6th Floor
                                                               Wilmington, DE 19801
                                                               (302) 577-8400
                                                               Email: Laura.Gerard@State.de.us
                                                               *TERMINATED: 06/20/2008*
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Michael F. McTaggart**
                                                               Department of Justice
                                                               820 N. French Street, 8th Floor
                                                               Carvel Office Building
                                                               Wilmington, DE 19801
                                                               (302) 577-8993
                                                               Fax: (302) 577-6630
                                                               Email: Michael.McTaggart@state.de.us
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **W. Michael Tupman**
                                                               Department of Justice
                                                               102 West Water Street
                                                               Dover, DE 19904
                                                               (302) 739-7641
                                                               Email: michael.tupman@state.de.us

CM/ECF LIVE - U.S. District Court:ded                                    Page2 of 6

*TERMINATED: 02/20/2008*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc P. Niedzielski**
Department of Justice
820 N. French St.
Wilmington, DE 19801
(302) 577-8400
Email: marc.niedzielski@state.de.us
*ATTORNEY TO BE NOTICED*

**Defendant**

**Edwin Rigsby**
*individually and in his official capacity*
*TERMINATED: 10/26/2007*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/08/2006 | 1 | COMPLAINT filed with Jury Demand against State of Delaware Division of Youth and Rehabilitative Services, Edwin Rigsby - Magistrate Consent Notice to Pltf. ( Filing fee $ 350, receipt number 144332.) - filed by Richard W. Powell. (Attachments: # 1 Civil Cover Sheet # 2 Acknowledgement of Consent Form)(mwm, ) (Entered: 08/09/2006) |
| 08/08/2006 |   | No Summons Issued (mwm, ) (Entered: 08/09/2006) |
| 08/08/2006 | 2 | Notice of Availability of a U.S. Magistrate Judge to Exercise Jurisdiction (mwm, ) (Entered: 08/09/2006) |
| 08/16/2006 |   | Case assigned to Judge Gregory M. Sleet. Please include the initials of the Judge (GMS) after the case number on all documents filed. (rjb, ) (Entered: 08/16/2006) |
| 08/21/2006 | 3 | SUMMONS Returned Executed by Richard W. Powell. State of Delaware Division of Youth and Rehabilitative Services served on 8/15/2006, answer due 9/5/2006. (Poliquin, Ronald) (Entered: 08/21/2006) |
| 09/22/2006 | 4 | ANSWER to Complaint by State of Delaware Division of Youth and Rehabilitative Services.(Tupman, W.) (Entered: 09/22/2006) |
| 11/15/2006 | 5 | MOTION to Stay *Proceedings Pursuant to 50 U.S.C. Section 510* - filed by Richard W. Powell. (Attachments: # 1 Notice of Motion# 2 Order# 3 Certificate of Service) (Poliquin, Ronald) (Entered: 11/15/2006) |
| 11/16/2006 | 6 | ORDER granting 5 Motion to Stay. Signed by Judge Gregory M. Sleet on 11/16/06. (mmm) (Entered: 11/16/2006) |
| 10/17/2007 | 7 | Letter to The Honorable Gregory M. Sleet from Ronald G. Poliquin regarding Request lift of stay. (Poliquin, Ronald) (Entered: 10/17/2007) |
| 10/17/2007 |   | SO ORDERED re 7 Letter request to lift the stay. Ordered by Judge Gregory M. Sleet on 10/17/2007. (asw) (Entered: 10/17/2007) |
| 10/19/2007 | 8 | ORDER TO SHOW CAUSE. Show Cause Response due by 11/19/2007. Signed by Judge Gregory M. Sleet on 10/19/07. (mmm) (Entered: 10/19/2007) |

| 10/26/2007 | 9 | Letter to The Honorable Gregory M. Sleet from Ronald G. Poliquin regarding Response to Order to Show Cause. (Poliquin, Ronald) (Entered: 10/26/2007) |
|---|---|---|
| 10/26/2007 | | SO ORDERED re 9 Letter dismissing Edwin Rigsby as a defendant in the case. Signed by Judge Gregory M. Sleet on 10/26/2007. (asw) (Entered: 10/26/2007) |
| 12/12/2007 | 10 | ORDER SCHEDULING RULE 16 TELECONFERENCE: A Rule 16.2b Scheduling Teleconference (see attached Order) has been set for Friday, December 21, 2007, at 10:00 AM with the Honorable Gregory M. Sleet. Counsel with primary responsibility for this case shall participate by phone and be prepared to address any pending motions. Unless otherwise excused, local counsel shall participate on the call as well. A Joint Status Report shall be filed no later than the close of business on Monday, December 17, 2007. Counsel for plaintiff is directed to initiate the call to chambers at (302) 573-6470. Ordered by Chief Judge Sleet on 12/12/2007. (ctd) (Entered: 12/12/2007) |
| 12/17/2007 | 11 | STATUS REPORT *Joint Status Report* by Richard W. Powell. (Poliquin, Ronald) (Entered: 12/17/2007) |
| 12/21/2007 | | Minute Entry for proceedings held before Judge Gregory M. Sleet - Telephone Scheduling Conference held on 12/21/2007. Initial Disclosures due 1/15/2008. Fact Discovery due 7/15/2008. Expert Discovery due (to be determined by counsel and incorporated into the proposed schedule)., Pretrial Order due 11/24/2008., Pretrial Conference set for 12/22/2008 at 2:00 PM., 2-day Jury Trial set for 1/20/2009 at 9:30 AM. Refer this case to the Magistrate for ADR. Plaintiff's counsel shall file a proposed scheduling order by 12/28/2007. (Court Reporter Kevin Maurer.) (asw) (Entered: 12/21/2007) |
| 12/28/2007 | 12 | PROPOSED ORDER Proposed Scheduling Order by Richard W. Powell. (Poliquin, Ronald) (Entered: 12/28/2007) |
| 01/15/2008 | 13 | CERTIFICATE OF SERVICE of Rule 26(a)(1) Disclosure Requirements by the Plaintiff by Richard W. Powell (Poliquin, Ronald) (Entered: 01/15/2008) |
| 01/15/2008 | 14 | NOTICE of Service by State of Delaware Division of Youth and Rehabilitative Services (Tupman, W.) (Entered: 01/15/2008) |
| 01/23/2008 | 15 | PROPOSED ORDER Confidentiality by State of Delaware Division of Youth and Rehabilitative Services. (Tupman, W.) (Entered: 01/23/2008) |
| 01/23/2008 | | ORAL ORDER denying (in its present form) 15 Proposed Confidentiality Order filed by State of Delaware Division of Youth and Rehabilitative Services. The Court will not approve the language of paragraph 1 that provides that the Defendant may determine whether a request by the Plaintiff seeks information that is relevant to the dispute. IT IS FURTHER ORDERED that paragraph 11 be redrafted as follows: "Any dispute arising under this Confidentiality Order shall be submitted to the Court for resolution pursuant to its discovery dispute resolution procedure which is set forth on the Court's website." After said revisions, the parties may refile the Proposed Confidentiality Order with the Court. Ordered by Chief Judge Gregory M. Sleet on 1/23/2008. (asw) (Entered: 01/23/2008) |
| 01/23/2008 | | SO ORDERED, re 12 Proposed Order filed by Richard W. Powell, ORDER, Setting Scheduling Order Deadlines: Case referred to the Magistrate Judge for the purpose of exploring ADR. Pretrial Conference set for 12/22/2008 at 02:00 PM in Chambers before Honorable Gregory M. Sleet.,Fact Discovery due by 7/15/2008.,Case Dispositive Motions due by 7/31/2008., PLEASE NOTE: THE DEADLINES FOR |

A000003

| | | MOTIONS IN LIMINE AND THE PRETRIAL ORDER HAVE BEEN CHANGED TO 11/26/2008 DUE TO THE COURT BEING CLOSED ON 11/28/2008 - Motions in Limine due by 11/26/2008.,Proposed Pretrial Order due by 11/26/2008., 3-day Jury Trial set for 1/20/2009 at 09:30 AM before Honorable Gregory M. Sleet. Ordered by Chief Judge Gregory M. Sleet on 1/23/2008. (asw) (Entered: 01/23/2008) |
|---|---|---|
| 01/24/2008 | 16 | PROPOSED ORDER Confidentiality by State of Delaware Division of Youth and Rehabilitative Services. (Tupman, W.) (Entered: 01/24/2008) |
| 01/24/2008 | | SO ORDERED, re 16 Proposed Order filed by State of Delaware Division of Youth and Rehabilitative Services. Ordered by Chief Judge Gregory M. Sleet on 1/24/2008. (asw) (Entered: 01/24/2008) |
| 02/20/2008 | 17 | NOTICE OF SUBSTITUTION OF COUNSEL re State of Delaware Division of Youth and Rehabilitative Services: Entry of appearance of attorney Laura L. Gerard. Attorney Deputy Attorney General W. Michael Tupman terminated. (Gerard, Laura) (Entered: 02/20/2008) |
| 05/21/2008 | 18 | CERTIFICATE OF SERVICE of Plaintiff's First Set of Interrogatories by Richard W. Powell (Poliquin, Ronald) (Entered: 05/21/2008) |
| 05/21/2008 | 19 | CERTIFICATE OF SERVICE of Plaintiff's First Request for Production of Documents by Richard W. Powell (Poliquin, Ronald) (Entered: 05/21/2008) |
| 05/23/2008 | 20 | NOTICE OF SERVICE of 1st Request for Production Directed to Plaintiff and 1st Set of Interrogatories Directed to Plaintiff by State of Delaware Division of Youth and Rehabilitative Services.(Gerard, Laura) (Entered: 05/23/2008) |
| 06/13/2008 | 21 | STIPULATION For Extension re SO ORDERED, Set Scheduling Order Deadlines,,,, by State of Delaware Division of Youth and Rehabilitative Services. (Gerard, Laura) (Entered: 06/13/2008) |
| 06/17/2008 | | ORAL ORDER denying 21 Stipulation filed by State of Delaware Division of Youth and Rehabilitative Services. Ordered by Chief Judge Gregory M. Sleet on 6/17/2008. (asw) (Entered: 06/17/2008) |
| 06/20/2008 | 22 | NOTICE OF SUBSTITUTION OF COUNSEL re State of Delaware Division of Youth and Rehabilitative Services: Entry of appearance of attorney Michael F. McTaggart. Attorney Laura Gerard terminated. (McTaggart, Michael) (Entered: 06/20/2008) |
| 06/25/2008 | 23 | NOTICE OF SERVICE of Defendant's Response to Plaintiff's 1st Set of Interrogatories and Defendant's Response to Plaintiff's 1st Set of Request for Production re 19 Certificate of Service, 18 Certificate of Service by State of Delaware Division of Youth and Rehabilitative Services. Related document: 19 Certificate of Service filed by Richard W. Powell, 18 Certificate of Service filed by Richard W. Powell.(Niedzielski, Marc) (Entered: 06/25/2008) |
| 07/02/2008 | 24 | MOTION for Extension of Time to Complete Discovery *until August 15, 2008 ; or in the alternative until July 25, 2008* - filed by Richard W. Powell. (Poliquin, Ronald) (Entered: 07/02/2008) |
| 07/07/2008 | 25 | NOTICE OF SERVICE of Plaintiff's Responses to Defendant's First Set of Interrogatories and Plaintiff's Responses to Defendant's First Request for Production of Documents re 20 Notice of Service by Richard W. Powell. Related document: 20 Notice of Service filed by State of Delaware Division of Youth and Rehabilitative Services.(Poliquin, Ronald) (Entered: 07/07/2008) |

CM/ECF LIVE - U.S. District Court:ded                                                                    Page 5 of 6

| 07/08/2008 | 26 | NOTICE to Take Deposition of Richard W. Powell on Friday, July 11, 2008 at 10:00 AM by State of Delaware Division of Youth and Rehabilitative Services.(Niedzielski, Marc) (Entered: 07/08/2008) |
| 07/09/2008 | 27 | NOTICE to Take Deposition of Dawn Garnett, Karen Smith, Greg Ward, Don McIllvain on July 15, 2008 and July 17, 2008 by Richard W. Powell. (Attachments: # 1 Certificate of Service)(Poliquin, Ronald) (Entered: 07/09/2008) |
| 07/10/2008 | 28 | CERTIFICATE OF SERVICE of Plaintiffs Second Request for Production of Documents Directed to the State of Delaware, Division of Youth & Rehabilitative Services by Richard W. Powell (Poliquin, Ronald) (Entered: 07/10/2008) |
| 07/10/2008 | | SO ORDERED, re 24 MOTION for Extension of Time to Complete Discovery *until August 15, 2008 ; or in the alternative until July 25, 2008* filed by Richard W. Powell, ORDER, Setting Deadlines: ( Discovery due by 8/15/2008., Case Dispositive Motions due by 8/31/2008.). Ordered by Chief Judge Gregory M. Sleet on 7/10/2008. (asw) (Entered: 07/10/2008) |
| 08/05/2008 | 29 | NOTICE to Take Deposition of Edwin Rigsby on August 12, 2008 by Richard W. Powell. (Attachments: # 1 Certificate of Service)(Poliquin, Ronald) (Entered: 08/05/2008) |
| 08/06/2008 | 30 | NOTICE to Take Deposition of Donald McIlvain on Tuesday, August 12, 2008 by State of Delaware Division of Youth and Rehabilitative Services.(Niedzielski, Marc) (Entered: 08/06/2008) |
| 08/06/2008 | 31 | STIPULATION Stipulation of Parties Regarding Certain Documents by State of Delaware Division of Youth and Rehabilitative Services. (Niedzielski, Marc) (Entered: 08/06/2008) |
| 08/06/2008 | 32 | NOTICE OF SERVICE of Documents Bates numbered RP000979 - RP001761 by State of Delaware Division of Youth and Rehabilitative Services.(Niedzielski, Marc) (Entered: 08/06/2008) |
| 08/08/2008 | 33 | NOTICE to Take Deposition of Nancy Pearsall on August 13, 2008 by Richard W. Powell. (Attachments: # 1 Certificate of Service)(Poliquin, Ronald) (Entered: 08/08/2008) |
| 08/11/2008 | 34 | NOTICE to Take Deposition of Richard W. Powell on Thursday August 14, 2008 at 9:00 a.m. by State of Delaware Division of Youth and Rehabilitative Services. (Niedzielski, Marc) (Entered: 08/11/2008) |
| 08/11/2008 | 35 | NOTICE to Take Deposition of Charles Parker, Chris Stetzar on August 15, 2008 by Richard W. Powell. (Attachments: # 1 Certificate of Service)(Poliquin, Ronald) (Entered: 08/11/2008) |
| 08/12/2008 | 36 | SUBPOENA Returned Executed as to Donald McIlvain on August 6, 2008 (Niedzielski, Marc) (Entered: 08/12/2008) |
| 08/12/2008 | 37 | NOTICE to Take Deposition of Donald McIlvain on Wednesday, August 13, 2008 by State of Delaware Division of Youth and Rehabilitative Services.(Niedzielski, Marc) (Entered: 08/12/2008) |
| 08/13/2008 | 38 | SUBPOENA Returned Executed as to Edwin Rigsby on August 5, 2008 (Poliquin, Ronald) (Entered: 08/13/2008) |
| 08/18/2008 | 39 | Order Setting Teleconference: Telephone Conference set for 8/25/2008 at 1:30 PM |

A000003

CM/ECF LIVE - U.S. District Court:ded

| | | before Judge Mary Pat Thynge to discuss ADR. Signed by Judge Mary Pat Thynge on 8/18/2008. (cak) (Entered: 08/18/2008) |
| 08/20/2008 | 40 | CERTIFICATE OF SERVICE of Plaintiff Richard W. Powell's Amended Responses to Defendant State of Delaware's First Set of Interrogatories by Richard W. Powell re 25 Notice of Service, (Poliquin, Ronald) (Entered: 08/20/2008) |
| 08/20/2008 | 41 | CERTIFICATE OF SERVICE of Plaintiffs Supplemental Production of Documents by Richard W. Powell re 25 Notice of Service, (Poliquin, Ronald) (Entered: 08/20/2008) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 08/21/2008 11:10:18 | | |
| PACER Login: | dj0024 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:06-cv-00494-GMS Start date: 1/1/1970 End date: 8/21/2008 |
| Billable Pages: | 4 | Cost: | 0.32 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD W. POWELL,                          )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )  C.A. No.:
                                            )
STATE OF DELAWARE,                          )
DIVISION OF YOUTH                           )
AND REHABILITATIVE SERVICES,                )
EDWIN RIGSBY, individually and in           )  JURY TRIAL DEMANDED
his official capacity.                      )
                                            )
        Defendants.                         )

## COMPLAINT

1.    This action arises to remedy discrimination on the basis of sex and race in the terms, conditions, and privileges of employment and to remedy retaliation against an employee for activity protected under provisions of Title VII of the Acts of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1331, 1337, 1343, and 42 U.S.C. § 2000(e)-5 (l)(3).

3.    Venue lies in this judicial district since all acts alleged herein occurred within the District of Delaware.

## PARTIES

4.    Plaintiff, Richard W. Powell, is a 38 year-old white male citizen of the United States and currently resides 2235 Andrews Lake Road in Felton, Delaware, within, Kent County, Delaware.

1

**A000007**

5.    Defendant, Edwin Rigsby, a black male, in the past and for times relevant, was an employee of the Division of Youth and Rehabilitative Services (hereinafter "DYRS") as Superintendent of the Stevenson House. He is sued in his individual and official capacities.

6.    Defendant, the State of Delaware Division of Youth and Rehabilitative Services (DYRS) is a Department of the State of Delaware established to provide leadership and advocacy for Delaware's children. Our primary responsibility is to provide and manage a range of services for children who have experienced abandonment, abuse, adjudication, mental illness, neglect, or substance abuse; and we endorse a holistic approach to enable children to reach their fullest potential. At all times relevant hereto, DYRS have been an employer as defined in § 701(b)(g)(h) of the Civil Rights Act, 42 U.S.C. § 2000(b)(g)(h), in that Defendant's operations effect commerce and Defendant has employed at least fifteen (15) persons.

## FACTS COMMON TO ALL COUNTS

### THE PLAINTIFF'S QUALIFICATIONS AND BACKGROUND

7.    Plaintiff began his employment with the DYRS since October 1990 at the Stevenson House.

8.    Plaintiff is currently employed as Youth Rehabilitation Counselor III.

9.    Plaintiff has a Bachelor's Degree and is also a Captain in the National Guard who has recently been deployed to fight in Operation Iraq Freedom.

10.    Despite Mr. Powell's educational background, leadership qualities, and experience in the field – he has been consistently been turned down for promotions in favor of applicants with less qualifications and experience.

2

**A000008**

## SEXUAL RELATIONSHIP BETWEEN SUPERVISOR RIGSBY AND BLACK FEMALE EMPLOYEES

11.    The common denominator surrounding these successful applicants being chosen over Plaintiff was that all were of black descent, female, and had sex a number of times with defendant Rigsby whom was Supervisor of the Stevenson House at the time.

12.    In addition, Plaintiff has been treated differently than similarly situated black females by being disciplined disproportionately for a single incident whereas the black female employees only received a written reprimand.

13.    By information and belief, Defendant Rigby was forced to leave his position as supervisor because of his ongoing sexual relationships with female counselors and other corrupt conduct.

14.    By information and belief, the environment under Superintendent Christopher Stetzer has not improved the situation.

15.    Since his employment with the DYRS the Plaintiff has been a diligent, loyal, and able employee receiving positive reviews from his supervisors.

16.    The following actions do not purport to be a complete recitation of all of the racially and sexually discriminatory actions by the Defendants but are illustrative of their behavior.

17.    The actions of the Defendant denied the Plaintiff the right to promotions regardless of his sex and race.

3

A000009

18.     Despite its actual or constructive knowledge of the unwelcome sexual and racial harassment of plaintiff, defendant DYRS took no actions to stop the inappropriate behavior, to discipline anyone, or otherwise to protect plaintiff from such unwanted conduct during her employment by the defendant DYRS.  The DYRS' actual or constructive knowledge of its agents' conduct towards plaintiff and its failure to take action against such conduct amounted to a condonation or ratification of such acts.

19.     By its actions and failures to act, defendant DYRS failed to take prompt, remedial action to eliminate the sexual and racial harassment of plaintiff by its agents.

## DEPARTMENT OF LABOR AND EEOC PROCEEDINGS

20.     On or about January 6, 2004, Plaintiff filed a Charge of Discrimination with the Delaware Department of Labor ("DOL") and the Equal Employment Opportunity Commission ("EEOC") against the State of Delaware alleging continuing sexual harassment and retaliation.

21.     On or about January 26, 2005, the Delaware Department of Labor issued a Final Determination and Notice of Right to Sue Letter.

22.     The Department of Labor determined that there was reasonable cause to believe that an unlawful employment practice occurred. The DOL noted that Plaintiff was subjected to a sexually hostile work environment, the DYRS current policy against sexual harassment is inadequate, and the DYRS investigation of the matter was untimely and inappropriate. Plaintiff's Counsel received a copy of the Notice of Right to Sue Letter on February 1, 2005.

4

302 577 5868    ☑ 009/012

23.    Plaintiff received the Notice of Right to Sue Letter on or about the same date.

24.    On July 29, 2005, the EEOC adapted the finding of the Department of Labor.

25.    The EEOC determined that the evidence establishes a violation of Title VII.

## COUNT I - SEX DISCRIMINATION/SEXUAL HARASSMENT

26.    Paragraphs 1 through 26 are hereby realleged and incorporated herein by reference as if fully set forth herein.

27.    Such acts as described above by Defendant DYRS, its agents and employees, constitute unlawful sex discrimination and sexual harassment against Plaintiff in violation of Title VII, 42 U.S.C. § 2000(e) et. seq.

28.    As a direct and proximate result of Defendant's unlawful discrimination, in the nature of sexual harassment, by and through its agents and employees, Plaintiff Richard W. Powell has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and potential lost wages and lost benefits.

## COUNT II – RACIAL DISCRIMINATION/RACIAL HARASSMENT

29.    Paragraphs 1 through 28 are hereby realleged and incorporated herein by reference as if fully set forth herein reference as if fully set forth herein.

30.    Such acts as described above by Defendant DYRS, its agents and employees, constitute unlawful racial discrimination and racial harassment against Plaintiff in violation of Title VII, 42 U.S.C. § 2000(e) et. seq.

5

A000011

02 FAX  302 577 5866                                                                    ☒010/012

31.     As a direct and proximate result of Defendant's unlawful discrimination,

in the nature of racial harassment and discrimination, by and through its agents and employees,

Plaintiff Richard W. Powell has been injured and has suffered and will continue to suffer pain,

fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation

of anxiety and potential lost wages and lost benefits.

## COUNT III – RETALIATION

32.     Paragraphs 1 through 31 are hereby realleged and incorporated herein by

reference as if fully set forth herein.

33.     Such acts as described above by Defendant DYRS, its agents and employees,

constitute unlawful continuing retaliation against Plaintiff for having complained of

discrimination and sexual harassment, and for having filed a Charge of Discrimination with the

Delaware Department of Labor and EEOC, and for having filed the instant lawsuit, in violation

of § 704(a) of Title VII, 42 U.S.C. § 2000(e)-(3)(a).

34.     As a direct and proximate result of Defendant's unlawful discrimination,

in the nature of sexual harassment and retaliation by and through its agents and employees,

Plaintiff Richard W. Powell has been injured and has suffered and will continue to suffer pain,

fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestation

of anxiety, lost wages, and lost benefits.

WHEREFORE, Plaintiff Richard W. Powell demands judgment in his favor against

Defendant DYRS for compensatory damages, damages for emotional distress, damages for pain

and suffering, lost wages, fringe benefits, front pay, special damages, medical expenses, costs of

this action, Attorney's fees, expert fees, pre-judgment interest, post-judgment interest, and any

other just and equitable relief as this Court deems proper, including an injunction permanently

A000012

restraining these violations of Title VII and a directive that Defendant take such affirmative action as are necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities.

YOUNG, MALMBERG, & HOWARD, P.A.

Dated: August 8, 2006

        /s/ Ronald G. Poliquin
Ronald G. Poliquin, Esquire
30 The Green
Dover, Delaware 19901
(302) 672-5600
Delaware Bar I.D. #: 4447
Attorney for Plaintiff

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD W. POWELL,                          :
                                            :
                Plaintiff,                  :
                                            :
        v.                                  :       C.A.No. 06-494-GMS
                                            :
STATE OF DELAWARE                           :
DIVISION OF YOUTH AND                       :
REHABILITIVE SERVICES,                      :
                                            :
                Defendant.                  :

## PLAINTIFF RICHARD W. POWELL'S AMENDED RESPONSES TO DEFENDANT STATE OF DELAWARE'S FIRST SET OF INTERROGATORIES

### PRELIMINARY STATEMENT

1.      Plaintiffs' investigation and development of all facts and circumstances relating to this

action is ongoing. These responses and objections are made without prejudice to, and are not a

waiver of, Plaintiff's right to rely on other facts or documents at trial.

2.      By making the accompanying responses and these objections to Defendant's requests for

production, Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all

objections as to the admissibility of such responses into evidence in this action, or in any other

proceedings, on any and all grounds including, but not limited to, competency, relevancy,

materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in

any way implying that it considers the requests or responses thereto to be relevant or material to

the subject matter of this action.

3.      Plaintiff will produce responsive documents only to the extent that such documents are in

the possession, custody, or control of the Plaintiff, as set forth in the Federal Rules of Civil

Procedure.

3.    For each allegation you are presenting in this matter, state with particularity and specificity the complete factual basis for each allegation and identify all persons having knowledge as well as each and all documents or other items of evidence in your possession that relate to each claim.

**Answer:** The Plaintiff objects to the request to the extent that it seeks information which is unduly burdensome to obtain and the extent that it is not reasonably calculated to lead to the discovery of admissible evidence, including the request for the identification of "all" or "each" and "every" allegation when all relevant facts can be obtained from fewer than "all" or "each" and "every" allegation. Notwithstanding the objections:

Plaintiff, a white male was denied a promotion and suspended for five (5) days because of his race and sex. Plaintiff was hired by DYRS in February 1992 (adjusted service time- October 1990). His present position is Youth Rehabilitation Counselor (YRCII) at the Stevenson House. In July 2000, Plaintiff applied for a supervisor position. The two black females hired instead of the Plaintiff received preferential treatment because of their race and sex. The evidence shows that Plaintiff has been employed by the DYRS since February 1992 and has a Bachelor's Degree. In contrast, the successful candidate began her employment with DYRS on December 22, 1997 as a Youth Care Worker. Other than a few courses in criminal justice, the successful appointee had no college degree. The other candidate chosen over Plaintiff had inferior qualifications compared to the Plaintiff. In addition, the evidence will show that the vast majority of employees promoted to supervisory roles and/or hired at the Stevenson House were black females. The black females were given preference by the black superintendent Edward Rigsby and later deputy superintendent Greg Fuller. The two successful black females Rewa Powell Mack candidate had an ongoing secret affair with the superintendent and received special treatment after her hiring. In

additional, another selected successful black female candidate Alfreda Russ received special treatment and was found to have committed fraud after her hiring. As a result of these actions and other corrupt conduct, Rigsby was demoted.

Plaintiff has also suffered disparate treatment and retaliation because of his race and/or gender and because complaining of discrimination based on his race and/or gender. During a private telephone conversation, the plaintiff was accused of making sexist remarks. As a result, the plaintiff was initially suspended for five (5) days. Alternatively, a black female who called a supervisor a "sorry bastard" was simply given a correction letter. In another situation, a black female who committed fraud was only given a three (3) day suspension.

In addition, the plaintiff suffered from a hostile work environment based on race and/or gender during his tenure of employment. These incidents included the leaving of racially motivated email in plaintiff's work space. As a result of defendant's inaction concerning plaintiff's complaints of racial harassment, the plaintiff was forced to transfer to another shift. In addition, black employees continually made threatening statements to the plaintiff with racial overtones and trash was left in plaintiff's vehicle while at work.

Further, plaintiff was retaliated against during future promotions because of his past complaints of discrimination. For instance, in February 3, 2003, the plaintiff was rejected for another supervisor position in favor of an inferior candidate in close proximity to his filing a charge of discrimination with the Department of Labor. In addition, the defendant retaliated against the plaintiff by not following procedures concerning his application for a promotion during his time stationed in Iraq by denying him an opportunity to apply for a supervisor position. The plaintiff was also retaliated against by supervisor and co-workers for lodging complaints of discrimination.

This does not represent the entirety of discriminatory and retaliatory acts that were committed against Plaintiff.

4.    Identify in chronological order all health care providers (e.g. doctors, dentists, physicians, surgeons, therapists, etc.) that have treated or examined you in the last 10 years and provide the dates of service or treatment, the nature of any treatment or examination and the result of each treatment or examination.

**Answer:** Plaintiff objects to each definition and request to the extent that it seeks information which is unduly burdensome to obtain and the extent that it is not reasonably calculated to lead to the discovery of admissible evidence, including the request for the identification of "all" or "each" and "every" when all relevant facts can be obtained from fewer than "all" documents or "each" and "every" document. Notwithstanding this objection, a separate document has been provided to the defendant in regard to this request.

5.    State and identify by names of parties, court or administrative body and case number all lawsuits or legal proceedings, at law or equity, of any nature in which you were a party and the disposition of that matter.

**Answer:** None accept for the grievance proceedings which defendant is aware of from these proceedings and allegations.

6.    Identify by name, address, phone number, location, date and persons present, all individuals that have been interviewed by you in connection with this matter and whether any documents or memorandum were prepared relating to that interview.

**Answer:** See answer to No.1. However, any notes taken would fall under the protection of attorney work product.

7.    Identify each and all photographs, videotapes, audio tapes or any other form of

Plaintiff also claims attorney fees and cost which are obviously being incurred on an ongoing basis, and which will be sought by Plaintiff following a verdict in his favor.

YOUNG, MALMBERG & HOWARD, P.A.

/s/ Ronald G. Poliquin
Ronald G. Poliquin, Esquire
I.D. No. 4447
30 The Green
Dover, Delaware 19901
302-672-5600
*Attorney for Plaintiff*

Dated: August 15, 2008

08/25/2006   09:59    302-633-2684                DSCYF/HUMAN RESOURCE              PAGE  10/10

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

**ENTER CHARGE NUMBER**

☐ FEPA  07031240
☐ EEOC  17CA300582

**Delaware Department of Labor**          and EEOC

(State, or local Agency, if any)

NAME (Indicate Mr., Mrs., Ms)
Richard W. Powell

HOME TELEPHONE NO. (Include Area Code)
(302) 284-9498

STREET ADDRESS          CITY, STATE AND ZIP CODE
2235 Andrews Lake Road   Felton DE 19943   Kent

COUNTY

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below.)

NAME
State of Delaware/DSCYF/Div. of Youth
Rehabilitative Services

NO. OF EMPLOYEES OR
MEMBERS 15+

TELEPHONE NUMBER (Incl. Area Code)
302-422-1407

STREET ADDRESS          CITY, STATE AND ZIP CODE
1825 Faulkland Road Wilmington, DE 19805

NAME

TELEPHONE NUMBER (Include Area Code)

STREET ADDRESS          CITY, STATE AND ZIP CODE

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☐ AGE

☐ RETALIATION  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST  7/1/00
LATEST   6/7/2003
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I a   white male who has been employed by the Respondent since October of 1990 most recently as a YRC II at the Stevenson House. On or about July 2000, I applied and interviewed for a Supervisor position along with Alfreda Russ (black). Before I interviewed, I was informed that Ms. Russ and I were given different interview panels. George Pippin, Jr. (white), the Administrator at the time was told not to sit on my panel by Nancy Pearsall (black), Deputy Director. As a result, I had a very biased panel and Ms. Russ was offered the position, even though it was questionable she met the minimum standards for the position. In December of 2002, I was accused of making sexist comments while engaged in a private telephone call with my union president about the female staff. At the conclusion of Respondent's tainted investigation, Christopher Stetzar (white), Superintendent made a recommendation for a 5 day unpaid suspension in a letter dated June 7, 2003. I have not served the suspension as I have filed a union grievance disputing this suspension.

I believe that I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended and the Delaware Discrimination in Employment Act based on my race (white) because: 1. I was denied a promotion for which I was qualified and the position was given to a black female of questionable qualifications. This is an example of the blatant discrimination in the hiring practices of Respondent. The supervisory positions which have been filled (excluding lateral transfers) in the past 12 years have all been black individuals; and 2. A disparity of justice in disciplinary actions exists within the Respondent Agency between the white and the black employees, specifically the white employees are disciplined more harshly than the black employees. Edward Rigsby (black), Superintendent of Stevenson House was accused of misuse of state funds and as a result was demoted only in title and rank not pay.  Secondly, Nadine Scurrie (black), Accounting Specialist was caught frauding Respondent and it is alleged that she received a 3 day suspension. In addition, all of Ms. Scurrie's duties in relation to the fraud were transferred to a white secretary. Lastly, Shavaughn Floyd (black), YRC II was only given a corrective letter of instruction not discipline for calling my supervisor a "Sorry Bastard" in front of several witnesses including the Superintendent. In addition, Respondent's investigation was not thorough and complete thereby inhibiting my adequate response. I also believe that the directive for my suspension came from the Director's office, namely Nancy Pearsall (black), Director and Daryl Dawson (black), Deputy Director via the white superintendent without expressly stating so.

☒ I also want this charge filed with the EEOC. I will advise the agencies
if I change my address or telephone number and I will cooperate fully
with them in the processing of my charge in accordance with their
procedures.

SIGNATURE OF COMPLAINANT

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

*Richard W. Powell*   7-22-05

NOTARY - (When necessary to meet State or

RP 0241

**A000019**

**STATE OF DELAWARE**
**DEPARTMENT OF LABOR**
**DIVISION OF INDUSTRIAL AFFAIRS – DISCRIMINATION UNIT**

Mr. Richard W. Powell                                   State Case No.: 03071240
2235 Andrew Lake Road
Felton, DE 19943

vs.                                                                      RP 0274

State of DE/DSCYF
Division of Youth Rehabilitative Services
1825 Faulkland Road
Wilmington, DE 19805
Attn.: Karen R. Smith, Human Resources

**FINAL DETERMINATION AND RIGHT TO SUE NOTICE**

Pursuant to 19 Del. C. § 710, *et seq.*, the parties in the above-captioned matter are hereby Noticed of the Department's Final Determination and Right to Sue Notice, as follows:

***Reasonable Cause Determination and Notice of Mandatory Conciliation.***

In this case, the Department has completed its investigation and found that there is reasonable cause to believe that an unlawful employment practice has occurred.  Under the provisions of the law, the parties are now required to engage in mandatory conciliation with your investigator.  Please be prepared to appear for conciliation on the following date and time  Wednesday, December 29, 2004 @ 9am at the location of 4425 North market Street Wilmington, DE 19802, 3rd floor.

Your cooperation and good faith effort is anticipated.  Your corresponding Delaware Right to Sue Notice will be effective one day after your compliance with the conciliation effort.

The reasonable cause finding is based primarily on the following facts:
Evidence in the form of witness statements and documentation corroborated Charging Party's allegations of race discrimination.  Respondent also provided documentation which indicates that during the time period in question an internal investigation revealed that there was a lack of consistency in program structure, decision making and implementation of policies coupled with racial tension in the work environment.  In addition to providing witness statements Charging Party also provided documentation as evidence of discrimination.

This Final Determination is hereby issued on behalf of the Department of Labor, Division of Industrial Affairs, Discrimination Unit.  See the attached Notice of Rights.

12/30/04
Date issued

1/7/05
Date conciliation completed

Julie K. Cutler, Administrator

Julie K. Cutler, Administrator

*Delaware Department of Labor, Division of Industrial Affairs, 4425 N. Market St., Wilmington, DE 19802*

DOL Form C-12RC : 10/04

**A000020**



U.S. Department of Justice

Civil Rights Division

*recieved 5/15/06*

---

Employment Litigation Section – PHB
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
www.usdoj.gov/crt/emp/emphome.html

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

WJK:WBF:mdw
DJ 170- 15-134

CERTIFIED MAIL
RETURN RECEIPT REQUESTED                    MAY   8 2006

Richard W. Powell
2235 Andrews Lake Road
Felton, DE 19943

Re: Richard W. Powell v. State of Delaware, Division of Youth
Rehabilitative Service, EEOC No. 171-2005-00072

Dear Mr. Powell:

It has been determined that the Department of Justice will not file suit on the above-referenced charge of discrimination that was referred to us by the Equal Employment Opportunity Commission (EEOC). This should not be taken to mean that the Department of Justice has made a judgment as to whether or not your charge is meritorious. You are hereby notified that conciliation in this matter was unsuccessful by the EEOC. You are further notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent. If you choose to commence a civil action, such suit must be filed in the appropriate court within 90 days of your receipt of this Notice.

Therefore, you should consult an attorney of your own choosing at your earliest convenience. If you are unable to locate an attorney, you may wish to contact the EEOC, or apply to the appropriate court, since that court may appoint an attorney in appropriate circumstances under Section 706(f)(1) of Title VII, 42 U.S.C. 2000e-5(f)(l).

We are returning the files in this matter to EEOC's Philadelphia District Office. If you or your attorney have any questions concerning this matter or wish to inspect the investigative file, please feel free to address your inquiry to: Marie M. Tomasso, Director, EEOC, The Bourse, 21 S. 5th St., Suite 400, Philadelphia, PA 19106-2515.

Sincerely,

Wan J. Kim
Assistant Attorney General
Civil Rights Division

By:       *William B. Fenton*

William B. Fenton
Deputy Chief
Employment Litigation Section

RP 0276

cc: Karen Smith
State of Delaware, Division of Youth Rehabilitative Services

A000021

09/26/2003  13:42    302-422-1535          STEVENSON HOUSE                    PAGE  04/05

 The Department of Services
for Children, Youth and
Their Families

                                                    (302) 424-3100
Division of                                         Fax (302) 422-1535
Youth Rehabilitative Services        Stevenson House

                                June 7, 2003


Richard Powell
2235 Andrews Lake Road
Felton, Delaware 19943

Dear Mr. Powell:

        This is to advise you that I am considering discipline in the form of a five (5) day
suspension without pay for your inappropriate, degrading and unprofessional comment
made in reference to female staff at the Stevenson House Detention Center.

        As you are aware, in the latter part of December 2002, the Department's
Affirmative Action/Equal Employment Opportunity Officer, Norwood Coleman, was
contacted by female staff at the Stevenson House alleging harassment and discrimination.
Mr. Coleman, along with Karen R. Smith, Human Resource Specialist, conducted a fact-
finding review of certain allegations leveled by female staff against you.  Numerous
interviews were conducted with male and female staff at the Stevenson House.

        The results of this investigation reflect the following:

- There was an allegation that sometime in December 2002, while you were on the
  phone in the control room at the Stevenson House, you were overheard by staff,
  and your immediate supervisor, to use the term "lazy fucking bitches" when
  referring to the female staff at the Stevenson House.  According to Dennis
  Bassette and other staff, the phone call was to Mr. Bassette and he acknowledges
  that you did use the term and it was in reference to the female staff at Stevenson
  House.  You acknowledge speaking on the phone with Mr. Bassette in an attempt
  to seek a conflict resolution.  You also acknowledged using the term, but deny that
  it was directed at the female staff of Stevenson House.

- The female staff outlined incidents of harassment and discrimination on the basis
  of gender.  You acknowledged that you believe that the female staff at Stevenson
  House "do not pull their weight" and that "they are making it twice as hard on
  male staff".  When given the opportunity to specify individual staff members, you
  insisted that it was "the female staff" not individual staff members to whom you
  referred.  Thereby, confirming the gender discrimination allegations against you.

                    *Kent County / Sussex County*
        *750 N. Dupont Highway  •  Milford, Delaware 19963*

                                                    RP 0264

                            **A000022**

The results of this investigation have brought to the forefront persistent complaints by numerous female staff at the Stevenson House of harassment and discrimination against them.   There is prima facie evidence that the female staff were treated differently and that you were a primary perpetrator.  It is also evident that the telephone conversation in December did take place and inappropriate and degrading language was used by you and directed at the female staff of Stevenson House.

I must stress to you the seriousness of your actions.   One of the essential responsibilities of a Youth Rehabilitative Counselor is to serve as a role model for the residents entrusted to your care who look to you for guidance and direction.  By your actions, you have jeopardized your credibility as a role model for residents and co-workers.  Conduct of this nature is unprofessional, totally unacceptable and will not be tolerated.

As a consequence of your actions, I am considering a five (5) day suspension without pay.  In accordance with Article 10.3 of the Collective Bargaining Agreement you are entitle to pre-decision meeting.  If you desire such a meeting, please submit a written request to Charles T. Watkins, Jr., 1825 Faulkland Road, Wilmington, Delaware 19805, within five (5) workdays of the receipt of this letter.

Sincerely,

Christopher Stetzar
Superintendent

Cc: Nancy D. Pearsall, Director
    Karen R. Smith, Human Resources

RP 0265

A000023

*State of Delaware*



## The Department of Services for Children, Youth and Their Families

*Division of*
*Youth Rehabilitative Services*    ●    *Office of the Director*    ●    633 - 2620

July 23, 2003

Mr. Richard Powell
2235 Andrews Lake Road
Felton, Delaware 19943

Dear Mr. Powell:

This letter is to inform you that the Division of Youth Rehabilitative Services has reconsidered the letter of five days suspension, issued June 7, 2003. This is a result of the letter of instruction issued to another employee for a similar infraction and also your public apology at the July 17th meeting in the presence of Representative Caulk acknowledging the use of inappropriate language in the workplace. I would like to remind you that this type of documentation would have also been accepted at the Director's level hearing and probably yield the same result.

I have not changed my opinion of the offense but in the interest of equity, I have reduced your discipline to a written reprimand. Please be advised if a similar infraction occurs in the future, you will be disciplined accordingly, up to and including termination.

Very truly yours,

Nancy Dowe Pearsall
Director

Cc:    Rep. G. Wallace Caulk, Jr.
~~Karen Smith, Human Resources~~
Chris Stetzar, Administrator, Stevenson House
Dennis Bassette, Union Representative

*Delaware Youth and Family Center*
*1825 Faulkland Road  ●  Wilmington, Delaware 19805*

**RP000587**

**A000024**

# CONFIDENTIAL DOCUMENT PURSUANT TO D.I. #31

## DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES

### DISCRIMINATION PROHIBITED

The Department of Services for Children, Youth and Their Families is committed to the principles of equal employment opportunity, affirmative action, and equitable service delivery. This Agency prohibits any form of unlawful discrimination in all personnel, employment and service delivery areas. Specifically, no person shall be denied service, excluded from benefits, or refused employment because of race, creed, religion, color, sex, age, national origin, or handicap. It is also the policy of the Department not to discriminate in personnel, employment or service delivery areas based on sexual preference.

Every client for aid or services and every employee including each applicant for employment, have the right under the law to register complaints when it is felt that the law has been violated in any respect. The complaint may be registered with the Division Director in the event of services areas, or with the Department's Affirmative Action Officer, State Human Relations Commission, United States Department of Health and Human Services, or by Merit System Appeal procedure (Section 21.0114).

Procedure for complaints is as follows:

1.  Complaints must be filed
    . . ."within on e hundred and eighty (180) days after the alleged unlawful employment practice" (Section 706 (e) Title VII or Civil Rights Act of 1964 as amended in 1972).

    . . ."within ninety (90) days after the alleged employment practice or one hundred and twenty (120) days after-discovery thereof, whichever is the later." (Title XIX, Chapter 7, Section 712(d), Delaware Code)

    . . ."within ten (10) days of the action being appealed" (Merit Rule 21.0114).

2.  The complaint and request for a hearing must be made in writing addressed to persons indicated in above paragraph.

3.  Receipt of the request will be acknowledged and a hearing will be scheduled according to the prescribed procedure.

4.  No employee or applicant will be subject to retaliation because he/she has made a charge of discrimination or testified in a hearing resulting from a complaint.

**over**

RP 0288

**DISCRIMINATION PROHIBITED**                                    **PAGE TWO**

5.    Complaints of discrimination based on sexual preference may be filed with the
      Department's Affirmative Action Officer.

**ALL EMPLOYEES** are requested to acknowledge their awareness of the above by signing the
following statement which will be filed in personnel folders in case of employment application, or
in the client's case review folder if appropriate.

DATE: _____

This is to certify that I, the undersigned, have been fully instructed in the Civil Rights provisions
recorded above and understand the rights of both employees and clients for services in the
Department of Services for Children, Youth and Their Families.

I have read the procedure for complaints of both employee and clients and will make every effort
to assist all clients of services supplied by this Department to insure strict compliance with Civil
Rights laws and regulations.

EMPLOYEE'S/CLIENT'S SIGNATURE: _____

Classification (if appropriate)

_____

Facility/Division

_____

RP 0289

**A000028**

# Complaints Process

**Introduction**

The purpose of this Internal Complaint Procedure is to afford every opportunity for resolving Affirmative Action complaints within the Department. To this end, these procedures insure that:

1.   Everyone's rights are respected and protected.
2.   Complaints are dealt with in a timely fashion.
3.   All appropriate staff members are involved in the process.

These procedures were developed as another step in the Department's ongoing efforts to effectively deal with and eliminate Affirmative Action concerns within this agency. These procedures provide a format for handling all complaints through a uniform system. They also give Department employees an improved in-house system for resolving complaints without outside assistance.

If an Affirmative Action complaint is filed outside the Department at any time before, during or after this procedure, the Department's Human Resources Manager shall manage the Department's response(s) to said complainant.

**STEP I**   **THE INQUIRY** - When the complainant first contacts the Affirmative Action Representative. The Inquiry Step is an informal stage in which information is exchanged and grounds for potential complaints are explored.

**STEP 11**   **FORMAL COMPLAINT** - A formal complaint is signed. The Department's Human Resource Manager is notified, who in turn notifies the Division(s) involved that a formal complaint has been filed. Efforts to resolve the complaint in an amicable manner are pursued through the Affirmative Action Office.

**STEP III**   **COMPLAINT RESEARCH AND INVESTIGATION** - Additional meetings between the complainant, the respondent, Affirmative Acton Representative and others needed to obtain facts and resolve the situation are held. The Affirmative Action Representative shall consult with the Department's Human Resource Manager who in turn will keep the Division apprised of the case's progress during this step. At the discretion of the complainant, Step IV may be substituted for Step III.

**STEP IV**   **PANEL REVIEW** - If the complaint cannot be resolved at any of the above steps, a panel is convened to make a final decision on the complaint. The panel will be comprised of the Affirmative Action Representative who will serve as chair, the Personnel Officer representing the Division of the respondent and a representative of the Division in which the respondent works appointed by the Division Director.

RP 0290

FORM AA #1

**DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES**

**AFFIRMATIVE ACTION COMPLAINANT FORM**

**Date of Inquiry:**_____

1.    **Employee:** _____ **Job Title:**_____

2.    **Age:**_____ **DOB:**_____      **Color:**_____      **Race:**____

    **Disability:**_____ **Sex:**_____ **Religion:**_____

3.    **Division:**      _____

4.    **Location:**      _____

5     **National Origin:**_____ **Sexual Harassment:**_____

    **Retaliation/Reprisal:**_____

6.    **Description of**
    **Complaint:**_____

    _____

    _____

6.    **Has a grievance or an appeal been filed on the same matter?**

    **Yes:**_____ **No:**_____ **If "yes," what is the status?**_____

7.    **Action taken on this complaint:**

    _____

    _____

    _____

    _____      _____
    **Complainant**                                    **Date**

    _____      _____
    **Affirmative Action Representative**        **Date**

RP 0291

**A000030**

# JOB DESCRIPTION

**Position:**    **Youth Rehabilitation Counselor**    *Richard W. Powell*

**Name:**    Signature: *x* _____

**Date:**

1.    **Human Resources**
   a.    Communicate and receive information from prior shift.  Confirm headcount with exiting staff.  This briefing is mandatory.
   b.    Share information with staff throughout shift as needed.
   c.    Daily, ensure completion of and turn in all daily paperwork by the end of your shift.
   d.    Daily, ensure shift briefing of events with staff relieving you.
   e.    Ensure all weekly, monthly, quarterly reports or paperwork are turned in on time 100% of the time.
   f.    You are required to receive 40 hours of training annually.
   g.    Meet with supervision on an as needed basis.
   h.    Ensure that unit meetings are completed.
   i.    Attend all mandatory Stevenson House meetings and all meetings as directed by your Supervisor.
   j.    Ensure compliance with department affirmative action plan.

2.    **Safety/Security**
   a.    Ensure building safety / security with beginning and ending shift checks.
   b.    Ensure safety/ security of residents with unit/program area checks at specific times.
   c.    Ensure and maintain key accountability at all times.
   d.    Ensure that pat searches are completed.
   e.    Ensure building cleanliness at all times.
   f.    Make every effort to maintain safety and security at all times.

3.    **Client Supervision**
   a.    Ensure a visible presence to support peers and to maintain control of the resident population.
   b.    Ensure operation of community meetings/groups.
   c.    Ensure resident rights are observed.  Inform supervision of transgressions when necessary.
   d.    Ensure that all special arrangements involving supervision and services are adhered to.
   e.    Ensure adherence to Stevenson House Suicide prevention policy.
   f.    Ensure resident compliance with all sanctions, norms, policies and procedures.
   g.    Complete all duties within your shift.
   h.    Follow Department, Division and Stevenson House policy and procedures.
   i.    Complete new hire training course as directed by supervisor.
   j.    Complete 40 hours OJT as directed by supervisor.
   k.    Hold residents accountable for their actions, when necessary.

RP 0042

**A000031**

4.      **Attendance**
   a.   Report to work on time.
   b.   Reporting time should afford ample time to receive shift briefing , to make shift preparations and to relieve previous shift on time.
   c.   Report all lateness issues and call outs to your supervisor.
   d.   Submit all requests for time off in a timely manor in adherence to Stevenson House policy.

5.      **Departmental and General Public Interactions**
   a.   Maintain a professional image at all times with your residents, departmental employees and the general public.
   b.   Direct all news media information and inquires to the facility Superintendent.
   c.   Be non-prejudicial and treat everyone tactfully and with respect.
   d.   Document the name and contact information of all pertinent interactions, due to an incident of concern, for follow up.
   e.   Ensure you report/document any conditions out of the ordinary, of the physical plant, residents, staff or visitors.

6.      **Written Communication**
   a.   Ensure completion of shift paperwork 100% of the time for each shift.
   b.   Ensure completion of all incident reports, use of force and behavior violations by the completion of your shift daily.
   c.   Ensure the completion and accuracy of all logs( unit, phone, control, chronological etc..) by the end of your shift daily.

7.      **All other Duties as Assigned**
   a.   Within time frame allowed, ensure completion of all other tasks  delegated by Supervisor, Superintendent or Division Director.

8.      **Policy and Procedure**
   a.   Be in compliance with all Stevenson House, Department, and Division policy.
   b.   Be in compliance with all Stevenson House distributed and posted memorandums.
   c.   Be in compliance with all written and verbal directives from Stevenson House administration.
   d.   When working overtime, mandatory or voluntary, be in compliance with all three shifts policies, procedures and practices.
   e.   No escapes will occur due to policy/procedure violations.
   f.   All staff will become FACTS proficient and keep skills up to date at the discretion of their supervisor.

RP 0043

**A000032**

Powell v. State of Delaware
Richard W. Powell

34

1   administrator when you started working at the
2   Stevenson House?
3       A. George Pippin, but he wasn't that when I
4   started. He was working at Ferris for I think
5   around a year. We didn't see him.
6       Q. But was he supposed to be the
7   administrator or the superintendent?
8       A. He was the superintendent, but he was --
9   I guess the governor had assigned him to work at
10  Ferris school, because they had a lot of problems
11  at that time.
12      Q. When you started working at the Stevenson
13  House, what was your position, what was the
14  classification?
15      A. Youth care worker.
16      Q. Were there levels, like 1, 2, and 3?
17      A. I believe they were a 7, pay grade 7.
18  I'm not 100 percent sure.
19      Q. So did you ever meet George Pippin?
20      A. Yes, I knew him prior to being hired.
21      Q. How is it you knew him?
22      A. He lived down the street.
23      Q. Did you know him before you ever applied
24  for a position?

35

1       A. Yes.
2       Q. Did you talk to him before you applied
3   for the position?
4       A. He didn't tell me about the position.
5   Roy Dill did, because when I was doing my
6   internship, like I said, Pippin wasn't there. Or
7   not really internship. When I was doing my
8   paper. Roy Dill was the person that was showing
9   me around.
10      Mr. Pippin didn't -- because I knew
11  him, he didn't become involved in my hiring or
12  anything. He didn't sit on my interview panel or
13  anything. He didn't want to be -- he removed his
14  self from that.
15      Q. Who made the hiring decision?
16      A. I believe it was Roy Dill. He was the
17  acting administrator at that time. I don't know.
18  It was a panel, so I don't know exactly.
19      Q. Do you know who the hiring authority was?
20      A. I'm not sure, sir.
21      Q. But you indicate that Mr. Pippin felt he
22  had to remove himself from any decision making
23  involving you; correct?
24      A. He told me that, yes.

36

1       Q. Did you have reason not to believe he was
2   not being accurate what he was telling you?
3       A. I could understand why he would do that,
4   so no one would come back and say he hired me
5   because he knew me before I applied. I
6   understand why he removed his self.
7       Q. So when you started to work there in
8   February of 1992, were your duties always the
9   same?
10      A. No. When I first got hired, like I said,
11  I did the -- I worked three to eleven for a while
12  until Mr. Ward thought that I was ready to go on
13  to eleven to seven, because on eleven to seven,
14  at that time, there was only two full-time staff,
15  and my position would have been one of the two
16  spots.
17      And then at certain times, while you
18  were still on probation, you would have been in
19  charge of the facility. There was no supervisor.
20  So he wanted to make sure that I could handle
21  that even being on probation running the building
22  at night.
23      Q. And how long did that last for?
24      A. I'd have to refer to my personnel file,

37

1   but it was a couple -- I think I did it for a
2   couple of years. And then one of the older
3   gentlemen that was on day shift talked to me
4   about wanting to trade shifts, and I said okay,
5   and I switched to day shift.
6       Q. When you were working eves, who was your
7   supervisor?
8       A. Greg Ward.
9       Q. And when you stitched to days, who was
10  your supervisor?
11      A. Roy Dill.
12      Q. When you switched to days, how long did
13  you work on days?
14      A. Until approximately 2003.
15      Q. And what happened in 2003?
16      A. I was being harassed by some of my
17  co-workers, so I requested to be moved to eleven
18  to seven.
19      Q. You were being harassed by some of your
20  co-workers?
21      A. Yes.
22      Q. Which co-workers were harassing you?
23      A. I'd have to refer to some of the
24  documents, but it would have been a lot of the

10 (Pages 34 to 37)

Wilcox and Fetzer, Ltd.    Registered Professional Reporters    302-655-0477

Powell v. State of Delaware
Richard W. Powell

38

1  black people that worked my shift. At that time
2  when I transferred, I was the only white male YRC
3  on my shift.
4      Q. How were they harassing you?
5      A. Throwing trash in my vehicle, leaving
6  literature around, talking about why white women
7  like black men and how black women are so
8  powerful that black men can't control them.
9  There was some black religious materials left in
10  my mailbox, in my work station.
11      I brought that to the attention of my
12  supervisor, the administrator, to Miss Smith and
13  also Norwood Coleman, and I asked for an EO
14  investigation and they didn't do anything.
15      Q. Did they investigate?
16      A. They didn't interview me. They just sent
17  e-mails and said they were looking into it.
18      Q. That was in 2003?
19      A. Approximately, yes. And then that's why
20  I transferred off the shift. Because I was
21  afraid.
22      Q. You were afraid?
23      A. I didn't know what was going to happen
24  next. They were throwing trash in my car and

39

1  leaving this literature around. I didn't know
2  what might be next.
3      Q. Did you report them throwing trash in
4  your car?
5      A. Yes, I did. I have e-mails where --
6      Q. How many times did you report it?
7      A. I reported it to Greg Ward, my
8  supervisor. Verbally numerous times. I told him
9  about the harassment numerous times, and I sent
10  him an e-mail when I found the trash in the car.
11  And also I think I believe I sent it to Chris
12  Stetzar, but I would have to refer to the e-mail.
13      Q. And this would have been in 2003, you're
14  saying?
15      A. Approximately, yeah.
16      Q. Who put trash in your car?
17      A. I don't know.
18      Q. Did you see them do it?
19      A. No. But it was warm weather and they
20  threw Burger King trash and it still had ice in
21  it. So it hadn't been there very long because I
22  got off work at three.
23      Q. And you discovered it when you got off
24  work at three?

40

1      A. Yes, I did.
2      Q. And how many times did this happen, they
3  threw trash in your car?
4      A. Once. There was other times there were
5  some things thrown in the back, but I didn't
6  know, I couldn't -- I was able to specifically
7  identify the trash because it still had ice in
8  the cups. But the other times when little things
9  were in my car, I couldn't specifically say that
10  they did that.
11      Q. The time that you discovered the Burger
12  King --
13      A. Correct.
14      Q. -- debris, is that correct, you said
15  there was still ice in there?
16      A. There was still ice in the glasses.
17      Q. So what was thrown in your vehicle?
18      A. Common trash, like the burger wrapper,
19  bag, the cup, French fry containers.
20      Q. And where were they thrown in your car?
21      A. I had a pick-up truck. They were thrown
22  in the back.
23      Q. Is your pick-up truck, the back of it
24  open?

41

1      A. Yes, it was.
2      Q. And where was your vehicle parked when
3  this happened?
4      A. Regular parking lot. Stevenson House
5  parking lot. Employee parking.
6      Q. In the front of the old building?
7      A. No. Side of the new building.
8      Q. So is it true that anyone passing by
9  could have done that?
10      A. I didn't have problems with anyone else
11  that I would have suspected as throwing trash in
12  my vehicle.
13      Q. But I'm asking you, from what you told
14  me, it was in the back of your pick-up truck;
15  correct?
16      A. Correct.
17      Q. And your pick-up truck is open, the back
18  of it is open?
19      A. I guess they could have thrown it in
20  anybody's car, but they picked mine.
21      Q. Well, you keep saying "they." Who was it
22  that specifically threw it in the back of your
23  pick-up truck?
24      A. I say "they" because it was more than one

11 (Pages 38 to 41)

# CONFIDENTIAL DOCUMENT PURSUANT TO D.I. #31

**Powell Richard W (DSCYF)**

From:   Stetzar Christopher R (DSCYF)
Sent:   Friday, February 25, 2005 8:28 AM
To:     Powell Richard W (DSCYF)
Subject: RE: E-Mails Sent to Me

I do not know why but I sense that the are trying to mess with you, I will be putting out a global on chain e-mails
and appropriate use policy.

-----Original Message-----
From: Powell Richard W (DSCYF)
Sent: Friday, February 25, 2005 5:05 AM
To: Stetzar Christopher R (DSCYF)
Subject: E-Mails Sent to Me

I was still wondering why these individuals were passing this type of literature and why they sent it to
me. is there some type of meaning behind it?  Could you please find out.  I am contemplating calling
MIS and filing a complaint.

-----Original Message-----
From: Powell Richard W (DSCYF)
Sent: Wednesday, February 23, 2005 11:54 PM
To: Stetzar Christopher R (DSCYF)
Subject: FW:

Can you possibly explain to me why I am being sent these E-Mails?

-----Original Message-----
From: Thomas Machika T (DSCYF)
Sent: Friday, February 18, 2005 5:30 PM
To: Odwin Sonya L (DSCYF); Taylor Sonja L (DSCYF); Coleman Fonda Y (DSCYF); Powell Richard W
(DSCYF)
Subject: FW:

-----Original Message-----
From: Tingle Camika S (DSCYF)
Sent: Friday, February 18, 2005 4:37 PM
To: James Jerome C (DSCYF); Banks Sabrina L (DSCYF); Weldon Ruthie M (DSCYF); Thomas Machika
T (DSCYF); 'reba.west@cffde.org'
Subject: FW:

-----Original Message-----
From: Bailey Rhonda L. (DSCYF)
Sent: Friday, February 18, 2005 11:33 AM
To: Dorman Felicia (DOL); Tingle Camika S (DSCYF)
Subject: FW:

*Rhonda Bailey*
Family Service Specialist
350 Virginia Avenue
Seaford, DE 19973
Phone: 302-628-2024
Fax: 302-628-2041

-----Original Message-----
**From:** Banks Gregory A. (DSCYF)
**Sent:** Friday, February 18, 2005 10:56 AM
**To:** Harris Victoria D (DSCYF); Soto Carmen D. (DSCYF); Tingle Linda C. (DSCYF); Duncan Necola M. (DSCYF); Thell Maria F. (DSCYF); Murray Barbara L. (DOJ); Johnson Mary (DHSS); Stancell Rosalind E. (DSCYF); Williams Connie (DHSS); Reed Eldora (DHSS); Boone Charlotte Y (DSCYF); Daniels Kim N (DSCYF); Jones Denise A (DHSS); Comer Ron (DSCYF); Bailey Rhonda L. (DSCYF); McKenzie Ronnet D. (DSCYF); Johnson Mary (DHSS)
**Subject:** FW:

-----Original Message-----
**From:** Spencer Jacqueline Y (DSCYF)
**Sent:** Friday, February 18, 2005 10:15 AM
**To:** Jones Denise A (DHSS); Smack-Bell Nadine (DHSS); Collins Ella (DHSS); Conway Alena J. (DSCYF); Hicks Constance (DHSS); Smack Vera A. (DOL); Johnson Roberta (DHSS); Banks Gregory A. (DSCYF); Walker Ruthynia A (DSCYF)
**Subject:** FW:

*JACQUELINE Y. SPENCER*
*DFS/KENT/SST*
*PHONE: 302.739.4800 EXT. 152*
*FAX: 302.739.6236*

-----Original Message-----
**From:** Benson Anna (DSCYF)
**Sent:** Thursday, February 17, 2005 3:51 PM
**To:** Ottley Deidre Y (Finance); king lisa (DHSS); 'Stephanie Murray'; Scott Gwen (DHSS); Simmons Bernadette (DHSS); Wooden Cheryl (DHSS); Oliver Teresa (DHSS); Grayson Lakisha (DHSS); Spencer Jacqueline Y (DSCYF)
**Subject:** FW:

Anna L. Benson, SST
Division of Family Services
Barratt Building, Suite 200
821 Silver Lake Boulevard
Dover, DE 19904

"Your choices on earth have direct consequences on your life in eternity."

-----Original Message-----
**From:** Simmons Detrich (DHSS)
**Sent:** Thursday, February 17, 2005 3:09 PM
**To:** Spady Martina (DHSS); Brown Lynne (DOC); 'Mischelle Simmons'; 'Collins, Lynette M.'; 'Verna Matthews'; 'Sherry Rasin-Benn'; Henry Kimberly (DHSS); Nettles Stacee (DHSS); Crosby Jacquelyn (DHSS); Benson Anna (DSCYF); Peterson Teresa (DHSS); Hackett Jasmine (DHSS); Battle Clara (DHSS)
**Subject:** FW:

-----Original Message-----
**From:** Spady Martina (DHSS)
**Sent:** Thursday, February 17, 2005 3:04 PM
**To:** Wallace Jahnae (DHSS); Boykin Yvonne m (DHSS); Butts Jujuanna (DHSS); Simmons Detrich (DHSS); Lloyd Jewel (DHSS); SMITH EDWIN (K12); Caldwell Dana (DHSS); Porter Mary (DHSS)
**Subject:** FW:

-----Original Message-----
**From:** Ellegood Delise (DHSS)
**Sent:** Thursday, February 17, 2005 2:26 PM
**To:** DeAngelo Geraldine (DHSS); Dillard Catrina (DHSS); Spady Martina (DHSS); Lee Dorothy; Caldwell Dana (DHSS); Dawkins Gloria (DHSS)
**Subject:** FW:

-----Original Message-----
**From:** Smallwood Gwendolyn (DHSS)
**Sent:** Thursday, February 17, 2005 12:39 PM
**To:** 'Hblocksom@aol.com'; Keys Doshia (DHSS); Selby Tisa (DHSS); Irons Linwood (Finance); Smallwood Todney (DHSS); 'catiz627@aol.com'; Wing Patricia (DHSS); Ross Angela (DHSS); Grayson Lakisha (DHSS); Phillips Virginia C.; Mahoney Kathleen (DHSS); Kelly Karen (DHSS); Crosby Jacquelyn (DHSS); Bowers Michelle (DHSS); Summers Crystal (DHSS); 'tina.brown@dol.net'; Ellegood Delise (DHSS); Everette Deborah (DHSS)
**Subject:** FW:

-----Original Message-----
**From:** Purnsley-Smith Marie M (DOL)
**Sent:** Thursday, February 17, 2005 10:14 AM
**To:** Smallwood Gwendolyn (DHSS)
**Subject:** FW:

Marie Purnsley-Smith
-----Original Message-----
**From:** Capers Michelle (DOL)
**Sent:** Thursday, February 17, 2005 8:38 AM
**To:** Purnsley-Smith Marie M (DOL); 'Hall, Anita'; Hurtt Zenia (Finance)
**Subject:** FW:

**From:** Benn Barron Sr. (Parts Director) [mailto:benn.barron@hunterdonbmw.com]
**Sent:** Thursday, February 10, 2005 10:06 AM
**To:** CGHJERZ@aol.com; Monica.McCleod@judiciary.state.nj.us; Evelyn Bilal; Sabrina Tabron; sharron.toliver@saralee.com; Nykisha.Barron@VerizonWireless.com; j1church@juno.com
**Subject:** FW:

----- Original Message -----
**From:** Sharlese Forbes
**Sent:** Thursday, February 10, 2005 9:48 AM
**Subject:** FW:

GOD has kept me here for a reason;
I survived because HE has a plan for me.

All my bad supervisors, the bad
management choices, the death of loved
ones, the back stabbing from my co-workers
and church members, the negative thoughts,
or the lack of executive support;
I made it because I am blessed!

I release and let go of all past hurts,
misunderstanding and grudges because
I am blessed! I recognize them as the
distractions they are for GOD is all there is.
All else is a lie!

Now give yourself a hug, wipe your tears
and walk in victory!!!

Now since you are a true child of God, you
know that with every blessing, a blessing is
required! So bless another, by passing this
on...IF YOU DO IT RIGHT, GOD WILL BLESS
IT RIGHT. GOD HAS A WAY OF TURNING
THINGS AROUND FOR YOU AFTER YOU
TURN TO HIM!

Have a Blessed Day!!!!!!!!!!

The information contained in this Electronic mail message is attorney privileged and confidential information intended only for

the use of the individual or entity named above. Such information also is intended to be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone.

http://www.stjohnlaw.com/

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

P000091
A000047

**Powell Richard W (DSCYF)**

| | |
|---|---|
| **From:** | Powell Richard W (DSCYF) |
| **Sent:** | Thursday, February 24, 2005 12:00 AM |
| **To:** | Thomas Machika T (DSCYF) |
| **Subject:** | RE: |

Is there some reason why you feel I needed this E-Mail?  I do not recall requesting this type of literature.

-----Original Message-----
**From:** Thomas Machika T (DSCYF)
**Sent:** Friday, February 18, 2005 5:30 PM
**To:** Odwin Sonya L (DSCYF); Taylor Sonja L (DSCYF); Coleman Fonda Y (DSCYF); Powell Richard W (DSCYF)
**Subject:** FW:

-----Original Message-----
**From:** Tingle Camika S (DSCYF)
**Sent:** Friday, February 18, 2005 4:37 PM
**To:** James Jerome C (DSCYF); Banks Sabrina L (DSCYF); Weldon Ruthie M (DSCYF); Thomas Machika T (DSCYF); 'reba.west@cffde.org'
**Subject:** FW:

-----Original Message-----
**From:** Bailey Rhonda L. (DSCYF)
**Sent:** Friday, February 18, 2005 11:33 AM
**To:** Dorman Felicia (DOL); Tingle Camika S (DSCYF)
**Subject:** FW:

*Rhonda Bailey*
Family Service Specialist
350 Virginia Avenue
Seaford, DE 19973
Phone: 302-628-2024
Fax: 302-628-2041

-----Original Message-----
**From:** Banks Gregory A. (DSCYF)
**Sent:** Friday, February 18, 2005 10:56 AM
**To:** Harris Victoria D (DSCYF); Soto Carmen D. (DSCYF); Tingle Linda C. (DSCYF); Duncan Necola M. (DSCYF); Theil Maria F. (DSCYF); Murray Barbara L. (DOJ); Johnson Mary (DHSS); Stancell Rosalind E. (DSCYF); Williams Connie (DHSS); Reed Eldora (DHSS); Boone Charlotte Y (DSCYF); Daniels Kim N (DSCYF); Jones Denise A (DHSS); Comer Ron (DSCYF); Bailey Rhonda L. (DSCYF); McKenzie Ronnet D. (DSCYF); Johnson Mary (DHSS)
**Subject:** FW:

Boone Charlotte Y (DSCYF)

DEPOSITION
EXHIBIT
D
KWP 7-17-08

m:        Russ Alfreda Y (DSCYF)
ent:      Wednesday, August 27, 2003 11:48 PM
To:       'Ctruelife@aol.com'; 'melindahitch@aol.com'; Boone Charlotte Y (DSCYF); Boone Janine M.
          (DNREC); Odwin Sonya L (DSCYF); Thomas Machika T (DSCYF); Sorden Arinthia A
          (DSCYF)
Subject:  FW: Angry White Girl to Black Men


-----Original Message-----
From: Singletary La' Vonne D (DSCYF)
Sent: Wednesday, August 27, 2003 10:01 AM
To: Seals Cassandra N (DSCYF); Russ Alfreda Y (DSCYF); Duffy Martina A (DSCYF);
Brittingham Conchau (DHSS); Floyd Shavaughn M (DSCYF); Coleman Fonda Y (DSCYF)
Cc: 'mar-sing@msn.com'
Subject: FW: Angry White Girl to Black Men


-----Original Message-----
From: Dukes Stephanie (DHSS)
Sent: Wednesday, August 27, 2003 7:56 AM
To: Singletary La' Vonne D (DSCYF); Singletary Patricia (DHSS); Bradley Esther (DHSS);
Johnson Mary (DHSS)
Subject: FW: Angry White Girl to Black Men


-----Original Message-----
From: Tisdale, Patrick E. [mailto:PTisdale@esic17.com]
Sent: Thursday, August 21, 2003 2:01 PM
To: Dorothy Spencer (E-mail); E. C. Tisdale (E-mail); Harold Nelson (E-mail); Melvin
McBride (E-mail); Mike James (E-mail 2); Dukes Stephanie (DHSS); Veronika McClary (E-mail)
Subject: FW: Angry White Girl to Black Men


-----Original Message-----
From: Albertha Barrett [mailto:REOAWB@langate.gsu.edu]
Sent: Tuesday, August 19, 2003 5:15 PM
To: LPress5893@aol.com; ncb999@bellsouth.net; seka9461@hotmail.com; Lakita Cordova
Subject: Angry White Girl to Black Men


So great to find this Black Prince defending us like this... It seems that
an article was written to Sister 2 Sister magazine by a Caucasian woman who requested a
response from black men. I'm so glad she got what she asked for (and more) !!!

This letter was written in response to an article in Sister 2 Sister:

Dear Jamie:

I'm sorry but I would like to challenge some of your Black male readers  I                am
White female who is engaged to a Black male-good-looking, educated and loving. I just
't understand a lot of Black female's attitudes about our relationship.

My man decided he wanted me because the pickings amongst Black women were slim to none. As
he said they were either too fat, too loud, too mean, too argumentative, too needy, too
materialistic or carrying too
much excess baggage.

Before I became engaged, whenever I want out I was constantly approached by Black men, willing to wine and dine me and give me the ... world. If Black women are so up in arms about us being with their men, why don't they look at themselves and make some changes.

I am tired of the dirty looks I get and snide remarks when we're out in public. I would like to hear from some Black men about why we are so appealing and coveted by them. Bryant Gumbel just left his wife of 26 years for one of us. Charles Barkley, Scottie Pippen, the model Tyson Beckford, Montell Williams, Quincy Jones, James Earl Jones, Harry Belafonte, Sydney Poitier, Kofi Anan, Cuba Gooding Jr., Don Cornelius, Berry Gordy, Billy Blanks, Larry Fishburne, Wesley Snipes...I could go on and on. But, right now, I'm a little angry and that is why I wrote this so hurriedly.

Don't be mad with us White women because so many of your men want us. Get your acts together and learn from us and we may lead you to treat your men better. If I'm wrong, Black men, let me know.

- Disgusted White Girl, Somewhere in VA.

Response:

Dear Jamie:

I would like to respond to the letter written by A Disgusted White Girl. Let me start by saying that I am a 28-year old black man. I graduated from one of the most prestigious universities in Atlanta, Georgia with a Bachelor of Arts Degree in Business Management. I have a good job at a major corporation and have recently purchased a house. So, I consider myself to be among the ranks of successful black men. I

will not use my precious time to slander white people. I just want to set the record straight of why black men date white women.

Back in the day, one of the biggest reasons why black men dated white women was because they were considered easy. The black girls in my neighborhood were raised in the church. They were very strict about when they lost their virginity and who they lost it to. Because of our impatience to wait, brothers would look for someone who would give it up easy without too much hassle. So, they turned to the white girls.

Nowadays, in my opinion, a lot of brothers date white women because they are docile and easy to control. A lot of black men, because of insecurities, fears, and overall weaknesses, have become intimidated by the strength of our black women. We are afraid that our woman will be more successful than us, make more money than us, drive nicer cars and own bigger houses.

Because of this fear, many black men look for a more docile woman. Someone we can control. I have talked to numerous black men and they continuously comment on how easy it is to control and walk over their white women. I just want to set the record straight. I wanted A Disgusted White Girl to know that not all successful black men date white women. Brothers like Ahmad Rashad, Denzel Washington, Michael Jordan, Morris Chestnut, Will Smith, Blair Underwood, Kenneth "Babyface" Edmonds, Samuel L. Jackson, and Chris Rock all married strong black women. And, to flip the script, there are numerous white men, in and out of the spot light, who openly or secretly desire black women over white women. Ted Danson, Robert DeNiro, and David Bowie to name a few. I just don't want a disgusted white girl to be misinformed. Stop thinking that because you are white that you are some type of goddess.

Remember, when black Egyptian Queens like Hatsepshut and Nitocris were ruling Dynasties and armies of men in Egypt, you were over in the caves of Europe eating raw meat and beating each other over the head with clubs.

Read your history! It was the black woman that taught you how to cook and season your food. It was the black woman that taught you how
raise your children. It was black women who were breastfeeding and
ising your babies during slavery. It is the black woman that had to endure watching their fathers, husbands, and children beaten, killed, and thrown in jail.

Black women were born with two strikes against them: being black and being a woman. And, through all this, Still They Rise! It is because of the black women's strength, elegance, power, love and beauty that I could never date anyone except my black Queen. It is not just the outer beauty that captivates and draws me to them. It is not the fact that they come in all shapes, sizes, colors and shades that I love them.

Their inner beauty is what I find most appealing about black women. Their strong spirit, loving and nurturing souls, their integrity, their ability to                          overcome
great obstacles, their willingness to stand for what they believe                     in, and
their determination to succeed and reach their highest potential                      while
enduring great pain and suffering is why I have fallen in love with                      black
women.

I honestly believe that your anger is geared more toward jealousy, envy than snotty looks. If this were not so, then why do you continuously go to tanning salons to darken your skin? If you are so proud to be white, then why don't you just be happy with your pale skin? Why do you continue to inject your lips, hips, and breasts with unnatural and dangerous substances so you can look fuller and more voluptuous? I think that your anger is really a result of you wanting to have what the black woman has.

BOTTOM LINE: If I were looking for a docile woman, someone I can walk over and control, I would give you a call. But, unfortunately, I am looking for a Virtuous Woman. Someone that can be a good wife and mother
-o my children.  Someone who can be my best friend and understands my
ruggles. I am looking for a soul mate. I am looking for a sister and;  unfortunately,
you do not and CANNOT fit the bill. No offense taken, none given.

Signed,

Black Royalty

Wow!! we must pass this on to make the day to the Black Queens of our acquaintances!



# *Who Am I?*



*Why Did You Make Me Black Lord .....*
*Lord .... Why did you make me black?*
*Why did you make someone*
*the world would hold back?*

*Black is the color of dirty clothes,*
*of grimy hands and feet...*
*Black is the color of darkness,*
*of tired beaten streets...*

*Why did you give me thick lips,*
*a broad nose and kinky hair?*
*Why did you create someone*
*who receives the hated stare?*

*You are the color of the midnight sky,*
*I put star glitter in your eyes...*
*There's a beautiful smile hidden behind your pain...*
*That's why your cheeks are so high!*

*You are the color of dark clouds*
*from the hurricanes I create in September...*
*I made your lips so full and thick,*
*so when you kiss...they will remember!*

*Your stature is strong,*
*your bone structure thick to withstand the*
*burden of time...*
*The reflection you see in the mirror,*
*that image that looks back, that is MINE!*

*So get off your knees,*
*look in the mirror and tell me what you see?*
*I didn't make you in the image of darkness...*
*I made you in the image of ME!*





*Black is the color of the bruised eye*
*when someone gets hurt...*
*Black is the color of darkness,*
*black is the color of dirt.*

*Why is my bone structure so thick,*
*my hips and cheeks so high?*
*Why are my eyes brown,*
*and not the color of the sky?*

*Why do people think I'm useless?*
*How come I feel so used?*
*Why do people see my skin*
*and think I should be abused?*

*Lord, I just don't understand...*
*What is it about my skin?*
*Why is it some people want to hate me*
*and not know the person within?*

*Black is what people are "Labeled"*
*when others want to keep them away...*
*Black is the color of shadows cast...*
*Black is the end of the day.*

*Lord you know my own people mistreat me,*
*and you know this just ain't right...*
*They don't like my hair, they don't like my*
*skin, as they say I'm too dark or too light!*

*Lord, don't you think*
*it's time to make a change?*
*Why don't you redo creation*
*and make everyone the same?*

# GOD's Reply:

*Why did I make you black? Why did I make you black?*

*I made you in the color of coal*
*from which beautiful diamonds are formed...*
*I made you in the color of oil,*
*the black gold which keeps people warm.*

*Your color is the same as the rich dark soil*
*that grows the food you need...*
*Your color is the same as the black stallion and*
*panther, Oh what majestic creatures indeed!*

*All colors of the heavenly rainbow*
*can be found throughout every nation...*
*When all these colors are blended,*
*you become my greatest creation!*

*Your hair is the texture of lamb's wool,*
*such a beautiful creature is he...*
*I am the shepherd who watches them,*
*I will ALWAYS watch over thee!*

Snead Clayton L (DSCYF)

DEPOSITION
EXHIBIT
F
KWP 7-170P

From:          Duffy Martina A (DSCYF)
Sent:          Wednesday, December 03, 2003 4:33 PM
To:            Singletary La' Vonne D (DSCYF); Lee-Neal Shantel (DHSS); Scurry Nadine D (DSCYF);
               'Lawrence M. Evans'; 'Foster, Leah'; Odwin Sonya L (DSCYF); Snead Clayton L (DSCYF);
               'Amduffy89@aol.com'; Sorden Arinthia A (DSCYF); Floyd Shavaughn M (DSCYF)
Subject:       FW: Black Mama


Martina Duffy
Management Analyst
Stevenson House
424-8108


-----Original Message-----
From: Hazzard, Davey [mailto:DHazzard@Nordson.com]
Sent: Wednesday, December 03, 2003 4:21 PM
To: Duffy Martina A (DSCYF); Evita Mila (aka Yvetta Young) (E-mail); Leah Foster (E-mail);
Gilbert Adonis (E-mail); Hazzard Karl (DOC); Noland Hazzard (E-mail); Troy Hazzard (E-
mail); Anthony Mckinney (E-mail); Debra Milligan (E-mail); Gabrador Milligan (E-mail);
Rene Murray (E-mail); Corneila Nelson (E-mail)
Subject: Black Mama


BLACK MAMA

  s. Jenkins comes to visit her son Anthony for dinner...who lives with a female roommate
.ikki...

During the course of the meal, his mother couldn't help but notice how pretty Anthony's
roommate was. She had long been suspicious of a relationship between the two, and this had
only made her more curious.

Over the course of the evening, while watching the two interact, she started to wonder if
there was more between Anthony and his roommate than met the eye.

Reading his mom's thoughts, Anthony volunteered, "I know what you must be thinking, but I
assure you, Vikki and I are just roommates."

About a week later, Vikki came to Anthony saying, "Ever since your mother came to dinner,
I've been unable to find the silver sugar bowl. You don't suppose she took it, do you?"

Well, I doubt it, but I'll email her, just to be sure." So he sat down and wrote:

Dear Mama,
I'm not saying that you 'did' take the sugar bowl from my house, I'm
not
saying that you 'did not' take it. But the fact remains that it has
been
missing ever since you were here for dinner.
Love, Anthony

Several days later, Anthony received a response email from his Mama, which read:

Dear Son,
  m not saying that you 'do' sleep with Vikki, and I'm not saying that you 'do not' sleep
with her. But the fact remains that if she were sleeping in her OWN bed, she would have
found the sugar bowl by now. Love, Mama.

Lesson of the day ..... Don't Lie to Your Mother... especially if she

1

is
Black

Davey L. Hazzard
Sr. Technician Electrical/Control Dept
23 Nordson Overlook
Dawsonville, GA 30534
(706) 531-2910

2

**Ward Gregory E (DSCYF)**



| | |
|---|---|
| **From:** | Powell Richard W (DSCYF) |
| **Sent:** | Wednesday, February 25, 2004 10:52 AM |
| **To:** | Ward Gregory E (DSCYF) |
| **Subject:** | Conduct of Mr. Jeffery Akins |

I have some very serious concerns about the conduct of Mr. Akins in this facility. On 2-24-04 this writer was involved in a physical restraint with resident William Duker. After the restraint it is documented by staff that Mr. Akins contacted the resident on the intercom system and made remarks that were intended to undermine staff and inflame the situation. (Refer to the reports submitted on the incident) These actions by Mr. Akins are creating a hostile work environment. This is an example of the continued harassment I am experiencing. I had informed Mr. Norwood Coleman and Karen Smith on 2-13-04 of the harassment that was being perpetrated on me by some of my co-workers. I had also informed them that I had anticipated these types of actions by the staff members that were harassing me. Within this environment we work in the conduct of Mr. Akins is unacceptable and does nothing but promote a hostile and dangerous work environment for all employees.

2/25/2004

Page 1 of 1

Ward Gregory E (DSCYF)

DEPOSITION
EXHIBIT
H
KwP 71707

| | |
|---|---|
| From: | Powell Richard W (DSCYF) |
| Sent: | Monday, January 26, 2004 10:18 AM |
| To: | Ward Gregory E (DSCYF); McIlvain Donald L (DSCYF) |
| Subject: | Retaliation |

Mr. Ward
On two occasions last week trash was thrown in the back of my vehicle.  The first day their was trash from 2 McDonalds Value meals and the second day their was the trash from one Burger King lunch meal.  I feel that this a retaliation for the request for action on the discriminatory documents forwarded throught the chain of command. I just wanted documentation to be sent to you.

Powell Richard W (DSCYF)



| | |
|---|---|
| From: | Powell Richard W (DSCYF) |
| Sent: | Wednesday, January 28, 2004 8:38 AM |
| To: | Ward Gregory E (DSCYF) |
| Cc: | McIlvain Donald L (DSCYF) |
| Subject: | Statements Made By Staff |

On January 27, 2004 at approximately 1100 AM I was positioned outside Mr. Robinsons classroom. Ms Coleman was observed to walk up to Mr. Whidbee and advise him that he was to go on break. Mr. Whidbee began to speak very loudly stating he was not going on break. He further made statements which had racial overtones. He stated that" this was not 1940 any more and this was not Mississippi". He made this statement several times loudly. He further stated repeatedly that he was not going on break. Ms Coleman then asked Mr. Akins to go on break then and he refused. She then turned to this writer and asked if I would go on break I stated that I would go and I went on break.

Powell Richard W (DSCYF)



DEPOSITION
EXHIBIT
J
KWP 7-17-08

| | |
|---|---|
| From: | Powell Richard W (DSCYF) |
| Sent: | Thursday, February 12, 2004 9:53 AM |
| To: | Ward Gregory E (DSCYF); McIlvain Donald L (DSCYF) |
| Subject: | Inappropriate Racial Remarks by Resident Tiera Smith |

At approximately 7:15A.M. on 2-12-04 this writer entered the B-Unit (Female) to verify the census. Upon entering the unit Resident Tiera Smith was yelling very loudly. As I listened to what she was saying it became clear that her remarks were of a racial nature. She was yelling that the white staff were all racists. She stated that the white staff had taken her level and another female resident's level because they were black. She further went on to state that the white residents were being given special treatment and not being held to the same standards as the black residents. She made the statements about the white staff being racists and prejudice numerous times in front of Seasonal YRC Weldon and no corrective action was taken to stop these racial remarks. I was in the office on the unit and could hear the remarks being made by the resident, Ms Floyd YRC II located in the workstation, also did nothing to stop the behavior of resident Smith. Due to the racial tensions in this facility I did not feel it was my place to confront the incident. I also feel that the lack of action by staff dealing with this very sensitive issue sends the message to the residents that these types of racial remarks are appropriate and acceptable. This is not the first time recently staff have not confronted residents making racial remarks that are offensive to the white staff. The racial tensions in this facility are increasing and it is only a matter of time before a major incident occurs that could be prevented.

2/13/2004

RP000974

A000061

# CONFIDENTIAL DOCUMENT PURSUANT TO D.I. #31